St. Louis, Iron Mountain & Southern Railway Company *v.*

Buckner.

Opinion delivered January 18, 1909.

1. Carriers—Failure to heat station—Mental anguish.—In a suit against a railroad company to recover damages for pain and suffering caused by its failure to heat its waiting room at a station, thereby causing plaintiff to take cold which developed into gastritis, it was error to permit plaintiff to testify that, on account of a fear that she was going to die of consumption, she suffered great mental anguish, it not appearing that such mental anguish was the natural consequence of defendant's negligence. (Page 62.)

2. TRIAL—IMPROPER AGUMENT—PREJUDICE.—An argument of counsel, based upon material and improper evidence, is erroneous and prejudicial. (Page 64.)

Appeal from Chicot Circuit Court; *Henry W. Wells,* Judge; reversed.

*T. M. Mehaffy* and *E. B. Kinsworthy,* for appellant.

1.   Appellee's testimony, detailing the causes of her mental worry, the fear of death, the fact that she had a sister to die of consumption, the fear that she herself was going into consumption, etc., was clearly incompetent and prejudicial. "To recover damages on account of the unintentional negligence of another, it must appear that the injury was the natural and probable consequence thereof, and that it ought to have been foreseen in the light of attending circumstances. 69 Ark. 405. Mental pain is a proper element of damages only when it arises necessarily and spontaneously out of or is a part of the physical suffering endured as a result of the injury. 6 Thompson on Negligence, 7320; 4 Elliott on Railroads, § 1816; 64 Ark. 538; 65 Ark. 177. Imaginative or sentimental anguish is not to be considered. 13 Cyc. 137 (2), 138 note 99; *Id.* 39, 41, and note 12; 80 Ill. App. 71; 9 Am. & Eng. R. Cas. (N. S.), 521; 14 Fed. 398; 63 Fed. 396; 62 Ill. 320; 4 Am. & Eng. R. Cas. (N. S.), 328. The second instruction, which, among other things, permitted a recovery for *all* suffering both physical and mental, which resulted from such negligence was erroneous. 70 Ark. 143; 65 Ark. 183. The argument of appellee's attorney based on her incompetent testimony was inflammatory and prejudicial. It is sufficient to warrant a reversal, if the charge was erroneous, and may have misled the jury, and it does not affirmatively appear that the misconduct objected to was harmless. 70 Ark. 143-4; 63 Fed. 396; 59 Fed. 860.

2.   Plaintiff's evidence as to suffering with gastritis, expenses, etc., was too remote and incompetent, and should not have gone to the jury. 6 Thompson on Negligence, § 7209; 4 Elliott on Railroads, § 1804; 1 L. R. A. 75; 68 L. R. A. 90, and note.

*R. A. Buckner* and *Garland Streett,* for appellee.

The word "all," as used in the second instruction, merely collects together as a whole "the expense and pain and suffering, both mental and physical, which the jury might find from the evidence was the *result* of such *negligence,* and could be stricken out from the instruction without altering its meaning. Under this instruction the jury's verdict should stand unless the court admitted improper evidence; and the testimony to which appellant objects was not incompetent when considered in connection with other testimony showing appellee's continuous sickness following immediately upon her exposure in November and her continuous suffering therefrom until the latter part of January following, when gastritis set in, which, at first acute, became afterwards organic, her condition gradually growing worse until finally in June following she went to a sanitarium for treatment. The evidence shows a "continuous succession of events so linked together as to make a natural whole" and an "unbroken connection" between the original negligence of appellant and the suffering from gastritis in May and June following. If the evidence establishes the negligence of appellant as the proximate cause of all of appellee's sickness, it is liable for *all* the pain and suffering, both mental and physical, resulting from such sickness. 41 Ga. 102; 33 Me. 376; 83 Ark. 584; 70 Ark. 136; 56 Ark. 390; 49 L. R. A. 17, 85; 57 Ark. 461; 14 Fed. 396; 1 L. R. A. 378-380; 24 L. R. A. 531; 41 S. W. 248.

Wood, J. Appellee was a passenger on appellant's train from Lake Village to Dermott. She had to change cars at Halley's Station. She arrived there at one o'clock, P. M. and waited until 3:25 P. M. for the train to Dermott. She alleged that the negligence of appellant in failing to keep its waiting room at Halley's Station comfortably heated caused her great bodily pain and mental anguish, that upon her arrival at home she was prostrated with cold and fever caused by the negligence of appellant as above alleged, and that since that time she has been an invalid. She sued appellant, laying her damages at the sum of $5,000.

The appellant denied all the material allegations of the complaint.

The evidence on behalf of appellee tended to show that she was a passenger of appellant from Lake Village to Dermott;

that, on arriving at "Halley's Station, she went into the depot. There was no fire there. She was suffering very much with the cold. It was a drizzling, windy, cold day. She had a chill while in the depot. The telegraph office adjoined the waiting room, there was a fire in it, but the agent would not permit passengers to avail themselves of it. The agent knew there was no fire in the waiting room. Appellee testified that after she got home she ached all over, that she had not recovered at the time of the trial from the effects of the cold and fever. She had fever and a cough the first month, and after that stomach trouble developed. After she had the cold and fever two months, gastritis set in, and her illness continued for months, necessitating her being carried to a sanitarium at Little Rock." Appellee goes into detail in explaining her long illness, the expenses thereof, and the suffering she endured by reason thereof. It is unnecessary to set out the testimony on this issue. It suffices to say, the evidence is sufficient here to support the verdict.

During the examination of appellee the following questions were asked and answers given:

"Q. You said that while you were suffering from the bronchitis, or whatever it was, your physical condition became so weakened, and you were worried. What occasioned that worry?

"A. It was fear of death; I was very fearful that I would die; I was badly frightened.

"Q. Did you have any particular reason for being frightened?

"A. Yes, sir; I haven't any desire to die; I have a desire to live; I knew I was in a dying condition; I had a sister to die in my house with consumption; I wouldn't have undergone the mental suffering for a million dollars.

"Q. Mrs. Buckner, you said yesterday that you suffered mentally from fear and thought you were going to die. What produced that fear, aside from the disease you were suffering from?

"A. I had a sister die from consumption. I knew all the symptoms. I nursed her. When my fever continued for weeks, I was afraid I was going into consumption. My mental worry I wouldn't have endured for a million dollars."

Appellant properly saved its exceptions to the introduction of this evidence.

"It is a fundamental rule of law," says this court, through Judge RIDDICK in *St. Louis, I. M. & S. Ry. Co.* v. *Bragg,* 69 Ark. 402, "that to recover damages on account of an unintentional negligence of another it must appear that the injury was the natural and probable consequence thereof, and that it ought to have been foreseen in the light of attending circumstances."

It should have been foreseen by appellant that its failure to keep its waiting room for passengers properly heated on a cold damp day would naturally cause a delicate female passenger like appellee to have a cold, chill, fever and even bronchitis, and to suffer the mental anguish that usually and naturally accompanies such ailments. But no one could contemplate, or would be expected to anticipate, that if appellee became ill with cold, fever, bronchitis, or even gastritis through the negligence of appellant in failing to heat its waiting room, she would, as a natural consequence of such illness, also be tortured with the "fear and dread of death." Much less could any one reasonably be expected to foresee, if appellee, through the negligence as alleged, became ill as alleged, that, as the natural consequence of such illness, she would be "afraid of going into consumption." It was not shown that consumption was a natural and proximate consequence of physical injuries of the kind complained of here. The mental agony which appellee "wouldn't have endured for a million dollars" was caused by the fear that she was going into consumption. In law, the proximate and natural, and not the remote and unnatural, cause and results are considered. Now, mental anguish of the character shown by this evidence is at most but a remote consequence of the physical injury which appellant is alleged to have caused. The jury in such cases should be allowed to consider only that mental anguish which accompanies the injury itself, which is fairly and reasonably the natural consequence that flows from it. 13 Cyc. 137 (2) and 138, note 99, pp. 39 and 41, note 12.

"The correct doctrine," says Mr. Sutherland, "as we conceive, is that if the act or neglect complained of was wrongful and the injury sustained resulted in the natural order of cause and effect, the person injured thereby is entitled to recover.

There need not be in the mind of the individual whose act or omission has wrought the injury the least contemplation of the probable consequences of his conduct; he is responsible therefor because the result proximately follows his wrongful act or non-action. All persons are imperatively required to foresee what will be the natural consequences of their acts and omissions according to the usual course of nature and the general experience. The lawfulness of their acts and the degree of care required of them depend upon this foresight. (Sutherland on Damages, pp. 42, 43, and cases cited; 4 Elliott, Railroads, § 1816, and numerous cases cited in note; Watson on Damages, § 36.)

Some cases go even further, holding that the mental anguish must arise necessarily and spontaneously from the physical injury. *Decatur* v. *Hamilton,* 89 Ill. App. 561; *Chicago City Ry. Co.* v. *Anderson,* 80 Ill. App. 71.

"The mental suffering is an element of damages recoverable in an action at law, because mental sufferings are so intimately connected with physical injuries as to make separation impracticable." *Peay* v. *Western Union Tel. Co.,* 64 Ark. 538. See also *Hot Springs Rd. Co.* v. *Deloney,* 65 Ark. 177; 6 Thompson on Negligence, 7320.

The court erred, therefore, in admitting the above testimony, and, having admitted it, also erred in giving the following instruction:

"If the jury believe from the evidence that the exposure of plaintiff in the waiting room at Halley Station was the proximate cause of her illness, and that said exposure was occasioned by and due to the negligence of the defendant company, they will find for the plaintiff, and assess her damages in such amount, not exceeding five thousand dollars, the amount sued for, as they may believe from the evidence will be a just and fair compensation to her for all of the expense and pain and suffering, both mental and physical, which they find from the evidence was the result of such negligence."

Under this instruction the jury may have considered that mental anguish shown by the incompetent testimony above discussed was the result of appellant's negligence, and therefore a proper element of damage; for they were authorized to assess damages for all suffering, both mental and physical. The in-

struction, however, would not have been misleading but for the incompetent testimony; for there are other instructions limiting the damages to be assessed to such as were the direct and proximate result of the negligence of appellant.

It follows from what we have said that the argument of counsel based upon the above incompetent evidence was erroneous and prejudicial.

The other objectionable argument it is not necessary to set out and discuss. It was highly improper, and we assume that it will not be repeated. The cross-examination of appellee, which her counsel claims provoked the argument, was strictly within the bounds of legitimate cross-examination, and furnished no excuse for the reference by appellee's counsel to matters not in evidence, and beyond the scope of legal argument. As the cause must be reversed for the error considered above, we will not determine whether this error of allowing the improper argument was cured by the admonition and rebuke which the court gave the counsel for making it.

The other assignments of error are not well taken. For the error indicated the judgment is reversed. and the cause is remanded for new trial.