WESTERN UNION TELEGRAPH COMPANY *v.* FLANNAGAN.

## Opinion delivered April 27, 1914.

1. TELEGRAPH AND TELEPHONE COMPANIES—COMMON CARRIERS.—Telegraph and telephone companies are common carriers of news. (Page 12.)

2. TELEGRAPH COMPANIES—CONNECTING COMPANIES—ACCEPTANCE OF MESSAGE.—A telegraph company which accepts and undertakes to deliver a message received from a connecting company, is liable to the sender of the message for a breach of the contract between the parties. (Page 12.)

3. TELEGRAPH COMPANIES—RECOVERY FOR MENTAL ANGUISH—CONFLICT OF LAWS.—Where a telegraphic message was sent from this State where damages for mental anguish are recoverable, to be delivered in another State, where such damages are not recoverable, and the telegraph company duly transmitted the message, but negligently failed to deliver it to the addressee, either the addressee or the sender may, in an action in this State, recover such damages for mental anguish as they may establish. (Page 12.)

4. TELEGRAPH COMPANIES—FAILURE TO DELIVER MESSAGE—PROBABILITY OF DAMAGE.—A telegraph message addressed to a male person, and signed by a female, and reading, "Leave here in the morning; arrive Kansas City Saturday. Meet me. (Signed) Maude," *held*, sufficient to put defendant company on notice that damages would probably follow the failure of the company to deliver the same to the addressee. (Page 13.)

5. TELEGRAPH COMPANIES—FAILURE TO DELIVER MESSAGE—MENTAL ANGUISH.—Mental suffering, to warrant a recovery, must be real, and there can be no recovery for imaginary situations or conditions of anxiety caused thereby; it must be a higher degree of suffering than arises simply from annoyance, disappointment, vexation or regret. (Page 14.)

6. TELEGRAPH COMPANIES—FAILURE TO DELIVER MESSAGE—MENTAL ANGUISH—LIABILITY.—Plaintiff sent a message to her husband in a distant city that she would arrive, and to meet her at a certain time. The company negligently failed to deliver the message. *Held*, under the facts, plaintiff was entitled to a recovery for mental anguish suffered. (Page 14.)

Appeal from Pike Circuit Court; *Jefferson T. Cowling*, Judge; modified and affirmed.

### STATEMENT BY THE COURT.

Mrs. Maude Flannagan instituted this action against the Western Union Telegraph Company to recover dam-

ages for mental anguish on account of the negligent failure of the latter to deliver a telegram sent by her. The facts are as follows:

The plaintiff delivered to the telegraph operator of the Memphis, Dallas & Gulf Railway Company, which operates a telegraph line from Murfreesboro, Arkansas, to Ashdown, Arkansas, the following message:

"Murfreesboro, Ark., April 17, 1913.

"T. H. Flannagan, Care Western Union Telegraph Company, Kansas City, Mo.:

"Leave here in the morning. Arrive Kansas City Saturday morning. Meet me.

(Signed)                              "Maude."

The operator at once transmitted the message to Ashdown, and the operator there forwarded the message at once to Kansas City; but, according to the testimony of the plaintiff, it was never delivered to her husband to whom it was addressed. On the other hand, evidence was introduced by the defendant tending to show that it delivered the message at the address to which it had been directed by the husband of plaintiff. The plaintiff left Murfreesboro on Friday morning and arrived at Kansas City on Saturday morning at 7:30 o'clock, the 19th inst. T. H. Flannagan not having received the telegram, did not meet her at the station as requested. The plaintiff waited around the station for him until about 9 o'clock in the morning, and then went up to the office of the defendant at the station to inquire about the delivery of the message. She was informed that no such message had been received by the defendant. She was not acquainted with any one in Kansas City, but had the address of the company for which her husband was working. She went to its office and was informed by the manager that a man of that name was working there, and that he thought he was staying at Ninth and Cherry Streets in Kansas City. Plaintiff went and inquired in that neighborhood for her husband, but failed to find him. She then returned to his employer's office, and the manager asked her if she had any money with which to

go to a hotel. She replied that she had not, and he then provided her a place at which to stay until her husband returned. She went to the place provided, and stayed there until the following Monday, when her husband returned to the city. Plaintiff at the time was in a delicate condition, and gave birth to a child on July 28 following. She continued her efforts to locate her husband from the time she arrived at Kansas City until he came to her on the following Monday morning.

Other evidence will be referred to in the opinion. The jury returned a verdict for plaintiff in the sum of one thousand dollars, and the defendant has appealed.

*Geo. H. Fearons, W. C. Rodgers* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. There was nothing to put defendant on notice of mental anguish. 90 Ark. 268; 79 *Id.* 33; 103 *Id.* 163.

2. In Missouri there can be no recovery for mental anguish. If there was any negligence it was in Missouri. 93 Ark. 415; 77 *Id.* 531; 79 *Id.* 448; 92 *Id.* 219; 74 *Id.* 9.

3. There is no evidence of mental anguish. 96 Ark. 218.

4. The verdict is excessive. 85 Ark. 263.

*W. T. Kidd* and *W. P. Feazell,* for appellee.

1. The wording of the message was sufficient to put defendant on notice. 29 Cyc. 495-2; 136 N. C. 489; 103 Am. St. 955; 56 S. W. 237; 70 Am. St. 105.

2. A recovery can be had when the contract was made in this State, even if none can be had in the State to which the message was sent. 156 S. W. 836; 92 Ark. 122; 93 *Id.* 515; 94 *Id.* 86; 137 Am. St. 914.

3. The verdict is not excessive. 84 Ark. 457; 82 *Id.* 526; 100 *Id.* 1.

HART, J., (after stating the facts). It is insisted by counsel for defendant that if the defendant was guilty of any negligence it was in the State of Missouri, and that in that State there can be no recovery for mental anguish for the negligent failure to deliver a telegram. They insist that there was no privity of contract between

the defendant and plaintiff, and that it is not liable in this action.

Telegraph and telephone companies are instruments of commerce, and are common carriers of news. *Southwestern Telegraph & Telephone Co.* v. *Danaher,* 102 Ark. 547. The telegram in question was delivered by the plaintiff for transmission to the agent of the Memphis, Dallas & Gulf Railroad Company, which operated a telegraph line from Murfreesboro, Arkansas, to Ashdown, Arkansas. The plaintiff did not have the money at the time to pay for the message, but the agent received it and agreed to send it, with the promise that the money should be paid on the following day. The price of the message was paid to the operator on the next day, as had been agreed upon. The operator transmitted the message from Murfreesboro to Ashdown, and the agent of the railway company at Ashdown, who was also the agent of the defendant company, received the message and transmitted it over the wires of the defendant company to Kansas City. The defendant, therefore, accepted the message under the contract made with the Memphis, Dallas & Gulf Railroad Company at Murfreesboro, and undertook to transmit it as a connecting carrier to the point of destination. Therefore, it accepted the benefits of the contract made with the initial carrier and could avail itself of any of the provisions contained in the contract, and was also liable for a breach thereof.

In the case of the *Western Union Telegraph Company* v. *Griffin,* 92 Ark. 219, the court held:

"Where a telegraphic message was sent from this State, where damages for mental anguish are recoverable, to be delivered in another State, where such damages are not recoverable, and the telegraph company duly transmitted the message, but negligently failed to deliver it to the addressee, either the sender or the addressee may, in an action in this State, recover such damages for mental anguish as they may establish."

It is next contended by counsel for defendant that there was nothing in the message that would put the de-

fendant on notice that appellee might suffer mental anguish if it was not delivered. The message on its face carried notice that its sender was a female, and that it was addressed to a male person. The message also suggested that a near relationship existed between the parties; that there was a good reason for plaintiff being met at the station, and that damages might naturally and reasonably follow as a result of its negligent failure to deliver the message. See *Western Union Telegraph Company* v. *Archie,* 92 Ark. 59.

It is next contended by counsel for defendant that there can be no recovery for mental anguish under the facts of this case. Under our statute damages may be recovered for mental anguish suffered in consequence of the negligence of a telegraph company. Messages, the failure to deliver which gives rise to mental anguish, are usually those which relate to sickness, death or funeral of a near relative. In some cases, however, a recovery has been allowed where no question of sickness or death was involved. We have uniformly held, however, that the mental suffering must be real, and that there can be no recovery for imaginary situations or conditions of anxiety caused thereby; in other words, that mental anguish indicates a higher degree of suffering than arises simply from annoyance, disappointment, vexation, or regret. In the case of the *Western Union Telegraph Company* v. *Hanley,* 85 Ark. 263, a recovery was allowed. In that case the plaintiff arrived at a deserted railway station at midnight. The public hack was full, so that she could not secure a seat therein, and she had to remain at the depot about three-quarters of an hour before she could proceed to her destination. In the subsequent case of *Western Union Telegraph Company* v. *Archie, supra,* we held that there could be no recovery, and undertook to distinguish between the facts in that case and those in the Hanley case. We said that in the Hanley case the mental anguish of the plaintiff consisted in what might have happened to a defenseless woman in the middle of the night in a strange place; that the very fact that she

arrived at that time of night, unattended, and with no one to meet her, might have caused her to be insulted or to suffer a worse injury. In the Archie case the plaintiff, who was also a woman, only remained at the station ten or fifteen minutes. She met a friend within two or three blocks after she left the station, and was immediately conducted to the home of a relative where she was going to visit. She arrived in the daytime, and there was nothing in her situation to cause her mental suffering. At most, she was only subject to annoyance or disappointment at not having been met by her relatives. In the instant case it is true that the plaintiff arrived at the station in the daytime, but she was unattended and unacquainted with any one at that place, except her husband. She was unaccustomed to the ways of a large city, and had no money whatever. She had never been in the city before, and knew no one there except her husband. She waited for him at the station for two hours. Then she went to the address of his employers, and the manager informed her that a man named Flannagan worked for the company, and that he thought he was staying at a place at Ninth and Cherry Streets. He did not offer her any further assistance or even ask her if she needed any. The plaintiff was too embarrassed to ask any further aid; but went to the address given in search of her husband. She failed to find him in that locality and returned to the office. While trying to find her husband, her helplessness and need of protection would doubtless be apparent to any designing person. The fact that she was alone, a stranger and unaccustomed to the ways of a large city, and in search of her husband placed her in a situation where it was not unlikely that she might be subject to insult and perhaps injury. The danger that might result to her from her situation and condition, under the circumstances was not wholly imaginary but her mental suffering for the time was real.

We think, however, as contended by counsel for defendant, that the damages recovered are excessive. When she returned to the office where her husband

worked, and it came time to close the office for the day, the manager provided a place for her to stay until her husband's return and sent her there. Thereafter she suffered no mental anguish within the legal meaning of the term. Under all the facts and circumstances adduced in evidence, we think the sum of one hundred dollars would have been sufficient compensation for mental anguish suffered by the plaintiff, and a judgment for that amount will be affirmed.