JONES *v.* KING.

4-8228                                              204 S. W. 2d 548

Opinion delivered October 6, 1947.

Rehearing denied November 17, 1947.

*Harvey L. Joyce* and *J. M. Smallwood,* for appellant.

*George O. Patterson* and *Edward H. Patterson,* for appellee.

HOLT, J. Appellee, Carrie King, brought this action against appellant to recover damages in her own right, as widow of Harden A. King, deceased, and also as administratrix for the benefit of his estate, for alleged conscious pain and suffering of her intestate. She alleged that her husband's death resulted from a rear-end collision of two trucks on paved highway 64, about 1½ miles east of Piney, Arkansas, caused by the negligence of the driver of appellant's truck. A jury trial resulted in verdicts and judgments for appellee, in her own right for $20,000, and as administratrix in the amount of $7,000, or a total of $27,000.

This appeal followed.

For reversal, appellant says: "*First.* The court erred in refusing to direct a verdict at the conclusion of all of the testimony for appellant on the whole case, for the reason that the undisputed proof shows that the proximate cause of the injury was the failure of the driver of the pick-up to give the signal as required by law, and that the undisputed facts show no negligence on the part of appellant's driver. *Second.* That the court should have instructed a verdict for appellant in the case of Carrie King, widow of Harden A. King, for the additional reason that Harden A. King died from lymphatic leukemia, a disease not traumatic in origin, and a disease from which he would have died had he never received the injury and that the injury was not the cause of his death. *Third.* That the allowance for conscious pain and suffering by the jury is excessive and the result of passion and prejudice." It is also argued that the allowance of $20,000 to appellee in her own right was excessive.

## (1)

Since appellant's first and second contentions, in effect, challenge the sufficiency of the evidence, we consider them together.

Briefly stated, the evidence tends to establish the following facts: December 19, 1944, at about 2:30 p. m., appellee's intestate, Harden A. King, was riding in a

truck driven by H. R. Pierce, the owner. They were traveling west on concrete highway 64, approaching a gravel road, known as the Hickeytown road, that turned off to their right at a 45-degree angle. For approximately 500 feet before they reached this side road the highway is downgrade. As Pierce and King, driving at about 30 miles per hour, reached a point approximately 100 feet from the side road, Pierce, the driver, reduced his speed to about 15 miles per hour and, at this rate of speed, began to turn off highway 64 onto the side road, and as his truck, with the exception of the rear wheels, left the concrete slab, appellant's truck, going about 35 miles per hour, struck the rear of Pierce's truck, turned it over twice, seriously injuring King.

The driver of appellant's truck testified that the overall length of his truck and trailer was 34 feet, that the gross weight, including freight he carried, was about 11 tons. He further testified that for about 150 feet east on highway 64, just before the collision, he had followed Pierce's truck at a distance of 50 feet to the rear and was within this distance when Pierce began to turn into the side road. Pierce admitted that he gave no signal to appellant's driver of his, Pierce's, intention to turn to the right on the side road.

Appellant's driver further testified that two automobiles about 100 feet apart were approaching from the opposite direction and that for this, and the additional reason that there was a "blind hill" in front of him, he could not go around the Pierce truck. There was, however, testimony on the part of appellee sharply denying that there were any cars coming from the opposite direction at the time as claimed by appellant.

We think it would serve no purpose to detail more of the evidence. It suffices to say that we have reviewed it all and after considering and weighing it in the light most favorable to appellee, as we must do under our long-established rule, we are unable to say that it is not substantial and insufficient to take the case to the jury.

Appellant earnestly argues that the proximate cause of the collision and injuries to appellee's intestate was the failure of Pierce, the driver of the truck in which appellee's intestate, King, was riding, to give any signal of his intention to turn off on the side road, as required by §§ 6725 and 6727 of Pope's Digest, and this was negligence preventing recovery. We cannot agree for the reason that the evidence also shows that appellant's driver was driving his heavily loaded truck at a speed of 35 miles per hour downgrade when it struck the rear end of Pierce's truck, and, as indicated above, for 150 feet before the collision he had been following Pierce's truck at a distance of only 50 feet. On this point, he testified: "Q. Traveling at 35 miles per hour, in what distance could you have stopped your truck? A. 35 miles an hour —between fifty and seventy-five feet." In these circumstances, the jury would have been warranted in finding, and evidently did find, that the proximate cause of the collision was the negligence of appellant's driver, in following too close to Pierce's truck and thereby was unable to stop or so manage his truck as to prevent the collision that followed.

This question of fact was submitted to the jury under instructions of which no complaint is made. The applicable rule of law is stated in the case of *Acco Transportation Company* v. *Smith,* 207 Ark. 70, 178 S. W. 2d 1011, where we said: "This case is more nearly like that of *Madison-Smith Cadillac Co.* v. *Lloyd,* 184 Ark. 542, 43 S. W. 2d 729, where we held that 'the law of the road is that the automobile in front has the superior right to the use of the highway for the purpose of leaving it on either side to enter intersecting roads,' and that a driver in the rear who fails to observe such rule is guilty of contributory negligence. While there is no question of turning off the highway into an intersecting road in the case at bar, we think the principle stated there applicable here with more force, since the truck was proceeding straight ahead on its own right side of the road, and the car in the rear must recognize the superior right of the truck

to so proceed on its own way, and so manage his own car as to cause no injury under the penalty of being chargeable with negligence.''

In his second contention, *supra,* appellant argues that appellee's intestate, King, died from what is known as lymphatic leukemia, a disease not traumatic in origin and from which he would have died had he never received the injuries alleged, and that such injuries were not the cause of his death. The evidence on this question was conflicting.

It appears that appellee's intestate was employed by H. R. Pierce Lumber Company at the time of the injuries complained of here and was a robust, able-bodied man. He was 51 years of age, with a life expectancy of 20.20 years, was married and lived on a farm near Clarksville with his wife.

Immediately following the collision he was taken to the office of Dr. Earle H. Hunt in Clarksville, a practicing physician and surgeon of some 38 years experience and of unquestioned ability. After leaving the doctor's office he went to his home and was confined to his bed for a period of about three weeks during which time he suffered intense pain in his neck and head which required frequent administration of sedatives. His neck became stiff and so remained until his death seven months and ten days later. His head was carried to the side and any effort to turn his head resulted in severe pain.

Dr. Hunt testified that he first examined appellee's intestate December 19, 1944, and again in March following. ''I made X-ray pictures in March and found that the deceased had what we call a broken neck, one of the cervical vertebra broken and crushed down. . . . I advised deceased to go to a bone specialist, Dr. Joe Shuffield. In my judgment this injury to his neck was caused from a traumatic hurt such as having been in a car wreck and would say that the cause of the leukemia and the man's death was the car wreck.''

Dr. Hunt further testified that he operated on appellee's intestate in August, 1944, four months before the accident in December, for appendicitis, and that he was not suffering from leukemia at that time.

From the period from June 4, 1945, to July 29, 1945, the date of his death, he was in the hospital under the exclusive care and observation of Dr. Hunt, and quoting from appellant's brief: "When he came back here to our hospital he came back to die and he did. He suffered with his neck continuously all of the time he was in the hospital, that is the only particular pain he suffered. The injury which he received in his neck is one that is calculated to have caused pain all of the time from the date of the injury until his death, that is my judgment. The pain would be constant and as it progressed it would get worse. During the last month of his life it took quite a bit of morphine to ease the man." There was other corroborative evidence, and also that appellee's intestate was suffering from leukemia at the time of his death.

In this connection, the court instructed the jury that although it might believe from the preponderance of the evidence that leukemia contributed to cause the death of deceased, King, yet if it further believed from the preponderance of the evidence "that deceased received an injury as alleged and that said injury was caused by the negligence of defendant's agent, servant, or employee as alleged, and that said injury, together with leukemia caused the death of deceased, and that but for said injury deceased would not have died, then your verdict should be for the plaintiff."

The court further instructed the jury that if it found from a preponderance of the evidence "that the injuries alleged to have been received by deceased, did not contribute to or hasten his death, but that he died from natural cause, separate and apart from any personal injuries alleged by plaintiff to have been sustained by him, then as to any claim for damages sought to be recovered by his death your verdict should be for the defendant."

We think these instructions correctly declared the law on the evidence presented on this phase of the case, and that the jury was warranted in finding, and evidently did find, that the injuries which appellee's intestate received from the collision contributed to or hastened his death, and that the court did not err in refusing to instruct a verdict for appellant. See *Lanier* v. *Trammell*, 207 Ark. 372, 180 S. W. 2d 818.

(2)

We are unable to agree with appellant's final contention that the total judgments in this case for $27,000, $20,000 for the widow in her own right and $7,000 for her as administratrix of her intestate's estate, are excessive, as a matter of law.

Appellee's intestate at the time of his injuries was a strong and able-bodied man, 51 years of age, with a life expectancy of 20.20 years. He was employed at a salary of $100 per month as a timber cruiser with the promise of his employer that his salary would be increased to $125 per month beginning with January 1, 1945. The increase was not given because of her intestate's injuries and his inability to perform the work. He also earned approximately $50 per month in addition to his salary by dealing and trading in livestock, so that at his death he was earning approximately $1,800 a year, most of which his wife testified he contributed to her support. There is substantial evidence that he suffered much conscious pain from the date of his injuries until his death, his suffering noticeably increasing during the seven months and ten days that he lived following his injuries, making it necessary to administer sedatives at times, and especially morphine, during the latter weeks of his illness.

There is no certain yardstick to measure recoverable damages in a case of this nature. The amount allowed must depend upon the particular facts in each case. Here, we are confronted with a death case, resulting from injuries, and where the conscious pain and suffering for

more than seven months following the injuries of appellee's intestate were intense.

We are unable to say, therefore, after giving a reasonable estimate as to the probable earnings of appellee's intestate had he lived, and his contribution to his widow's support, reduced to present value, that the allowance of $20,000 to the widow was excessive, nor can we say that an allowance of $7,000 for conscious pain and suffering, in the circumstances, was excessive.

On the whole case, finding no error, the judgments are affirmed.