**Girdle BEATY, Sr., Admr., Estate of James Daniel Beaty, Plaintiff,**

v.

**BUCKEYE FABRIC FINISHING CO. and William McCurdy, Defendants.**

**Miss Daisy BEATY, Plaintiff,**

v.

**BUCKEYE FABRIC FINISHING CO. and William McCurdy, Defendants.**

**Nos. 3696, 3697.**

United States District Court
E. D. Arkansas, W. D.

Dec. 28, 1959.

C. Van Hayes, Benton, Ark., for plaintiff, Girdle Beaty, Sr.

John H. Lookadoo, Arkadelphia, Ark., for plaintiff, Daisy Beaty.

Robert Lindsey, Wright, Harrison, Lindsey & Upton, Little Rock, Ark., for defendants.

HENLEY, Chief Judge.

These two cases, which were consolidated for trial and tried to the Court without a jury, grow out of two closely connected motor vehicle accidents which occurred on August 8, 1957, at a point on U. S. Highway No. 67 a few miles southwest of Benton, Saline County, Arkansas, and about a mile north of the Benton Unit of the Arkansas State Hospital for Nervous Diseases. As a result of the first accident Miss Daisy Beaty, the plaintiff in No. 3697, allegedly sustained personal injuries on account of which she has brought action. In the course of the second accident, which involved the same two vehicles and occurred about three minutes after the first, James Daniel Beaty received injuries and was killed. Case No. 3696 was brought by the administrator of the Estate of James Daniel Beaty to recover damages for decedent's personal injuries and death for the benefit of the estate and decedent's next of kin.

Miss Beaty is, and her father was, a citizen of Arkansas, as is the plaintiff administrator, Mr. Girdle Beaty, a son of the deceased. The defendant Buckeye Fabric Finishing Co. is an Ohio corporation, and the individual defendant, William McCurdy, is a citizen of that State.

From the Arkansas State Hospital to the City of Benton, Highway 67 runs generally north. A short distance north of the hospital the highway dips into a narrow valley and then goes up a rather steep hill and curves sharply to the left before the crest of the hill is reached. At the crest of the hill the highway constitutes a viaduct over a branch of the Missouri Pacific Railroad which at that point runs at right angles to the highway through a deep cut. Beyond the viaduct the road descends sharply into another valley. In the course of that descent the highway crosses a gravel road. The portion of that road which leads to the left away from the highway was referred to in the evidence as "Old Highway 88." The portion of the road which leads to the right away from the highway is known as "River Road" and runs downhill from the highway. The scene of the first accident was a point immediately beyond the viaduct. The scene of the second was a point on the east shoulder of the highway beyond the viaduct and near the entrance to River Road. Prior to the first accident both vehicles had been proceeding north toward Benton.

Plaintiff Miss Daisy Beaty resides in the vicinity of the Arkansas State Hospital where she is employed as a cook. At the time of the accident she and her father, who was nearly 83 years of age, lived together. Shortly before 8:30 a. m. on the morning in question Miss Beaty, accompanied by her father, started to Benton where she intended to obtain chiropractic treatment for what she described as "catches" in her back. She was proceeding at a moderate rate of speed and on the right hand side of the road. Some distance ahead of the Beaty car and going in the same direction was an automobile being driven by a Mrs. Vernon Harris. Behind the Beaty car was a heavily laden tractor-trailer belonging to the corporate defendant and being operated by its employee, the individual defendant, McCurdy. The vehicle that McCurdy was driving weighed more than 20,000 pounds and was carrying a load of more than 30,000 pounds.

Defendants' tractor-trailer was equipped with air brakes on both portions of the vehicle and with a mechanical emergency brake which when manually operated applied pressure to the drive shaft of the tractor. The air brakes on this vehicle could be applied to both tractor and trailer by means of a foot pedal in the cab of the tractor, and there was also a hand valve in the cab by which the driver could apply the air brakes to the trailer only. The vehicle was further

equipped at the rear of the cab with a "break away" valve, the purpose of which was to preserve air for the brakes of the tractor should it at any time become disengaged from the trailer.

Air for the brakes on the defendants' vehicle was supplied by means of a compressor which operated when the engine was running. There was a gauge in the cab which would indicate to the driver the amount of air pressure available at a given time, and there was an alarm system to give warning should the air pressure fall below a safe level. According to the testimony of a mechanic called as a witness by the plaintiffs, the minimum safe air pressure on the defendants' vehicle was from 100 to 120 pounds per square inch.

It was the intention of Mrs. Harris to turn to the left onto "Old Highway 88" after crossing the viaduct, and while she was on the viaduct she reduced her speed and gave an appropriate signal for a left turn. Miss Beaty saw this signal and reduced speed, giving the proper signal of her action. The Harris vehicle cleared the viaduct, and just as it had completed its left turn, the Beaty car was struck from the rear by the defendants' tractor-trailer. While this impact, which constituted the first accident, caused Miss Beaty to sustain certain personal injuries, the impact itself was not severe. This is evidenced by the fact that, notwithstanding the tremendous weight of the tractor-trailer, the Beaty car was not sent out of control, and the damage to it was little more than the breaking out of the left tail light.

After this first collision Miss Beaty and McCurdy pulled over to the right or east shoulder of the highway and stopped their respective vehicles between the end of the viaduct and the entrance to River Road, the tractor-trailer being about ten feet behind the Beaty car. Occupants of both vehicles got out to inspect the damage. Before getting out of the tractor-trailer McCurdy set the emergency brake and also the hand valve so as to keep the air brakes on the trailer engaged. He left the motor running, which had the effect of keeping the air compressor in operation. As they were parked, both vehicles were headed down grade.

Miss Beaty and McCurdy met at the left rear of the Beaty car and began to inspect the damage. At about the same time Mr. Beaty came around the right side of the Beaty car to a position at the rear of that vehicle and between it and the tractor-trailer. After a lapse of not more than three minutes the brakes on the defendants' vehicle failed, and it rolled down the grade, catching Mr. Beaty and pinning him momentarily against the rear bumper of the Beaty car. As the Beaty car rolled away from this second impact, Mr. Beaty fell to the ground underneath the tractor-trailer where he was mangled and crushed to death by the wheels of that vehicle. While pinned between the vehicles, Mr. Beaty cried out, "Oh, my Lord!" And just before the truck passed over him, he was heard to groan. All of this happened in the immediate sight and hearing of Miss Beaty.

When McCurdy observed that his tractor-trailer was in motion, he ran to it, got into the cab, and steered the vehicle so that it rolled down River Road. At that time he had insufficient air to operate the brakes, and was forced to bring the vehicle to a halt by "gearing it down." According to the testimony, the tractor-trailer rolled 650 feet down River Road before coming to a stop. The Beaty car rolled about 30 feet down the shoulder of the highway before it finally came to rest.

The accident was investigated by a member of the Arkansas State Police and a deputy sheriff of Saline County. The latter testified that he inspected the tractor-trailer at the point where it had finally been stopped, that he found it had no air available for braking purposes, and that he was unable to build up any air pressure by starting the engine and running the compressor.

A few minutes after the accident Sam Gibson, an undertaker at Benton, arrived at the scene in an ambulance and took Mr. Beaty's body away. Mr. Gibson tes-

tified that when he arrived Miss Beaty was still on the scene in a state of hysteria and shock.

In view of the condition of the tractor-trailer the deputy sheriff instructed the defendant McCurdy not to try to move the vehicle until the brakes had been repaired. From the testimony of Charles Nicholas, an experienced mechanic who repaired the brakes, and of McCurdy, the Court is able to determine definitely the cause of the second accident and also to determine what was in all probability at least a contributing cause of the first.

Mr. Nicholas testified that when he examined the tractor-trailer he found that the break-away valve had been forced open by a foreign object, which appeared to be a piece of carbon, and that consequently air had been "bled" out of the tank until there was none left. He was unable to say how long the valve had been open, but on cross-examination he stated that the loss of air through the open valve would be gradual. In view of the very short time that elapsed between the first impact and the second, the Court is convinced that the valve had been open, and that the defendants' vehicle had been losing air for some time prior to the first collision. Although the loss may have been compensated for to some extent by the fact that the compressor was in operation as long as the engine was running, it is noted that after the second accident the deputy sheriff was unable to build up any pressure by running the compressor.

As stated, when McCurdy parked his vehicle on the shoulder of the road, he set the mechanical emergency brake on the tractor and the air brakes on the trailer. When the air pressure became insufficient to hold the trailer, the trailer came forward against the tractor, breaking the latter's inertia and overcoming the restraint of the mechanical emergency brake so that the entire vehicle began to roll down the hill.

It is the theory of the plaintiffs that both of the accidents were caused by the negligence of McCurdy, and that both defendants are liable for the resulting injuries and damage. The plaintiff administrator seeks to recover, for the benefit of the estate of the deceased, on account of the alleged conscious physical pain and mental anguish of the latter prior to his death, and for the benefit of his children on account of the mental anguish which it is claimed they have sustained by reason of the death of their father. In her own action Miss Beaty seeks to recover on account of her personal injuries and alleged pecuniary losses, and she claims in this connection that her own injuries have been severely aggravated by her emotional distress resulting from the witnessing of her father's death and that this distress and resulting aggravation of her physical condition should be taken into consideration in measuring her damages.

In resisting the claims of the plaintiffs the defendants deny that either accident was caused by negligence on the part of McCurdy, and they take issue with the plaintiffs as to damages. In the latter connection they particularly insist that in measuring Miss Beaty's damage no account should be taken of the mental anguish endured by her as a result of witnessing her father's death, or of any aggravation of her physical injuries resulting from such anguish.

In their answer in No. 3697 the defendants allege that Miss Beaty was guilty of contributory negligence, but there was no evidence to sustain that allegation, and the contention based thereon may be rejected without further discussion.

## I.

On the issue of negligence the Court finds from a preponderance of the evidence that both the first and the second accident were proximately caused by the negligence of defendant McCurdy.

It is well settled in Arkansas that ordinary care requires every person who operates a motor vehicle upon a public highway to keep a lookout for other vehicles, and to have his own vehicle under such control as will enable him to check its speed or to stop it absolutely if necessary to avoid injury where

danger is apparent or reasonably to be anticipated. Roark Transportation, Inc., v. Sneed, 188 Ark. 928, 68 S.W.2d 996; Smith Arkansas Traveler Co. v. Simmons, 181 Ark. 1024, 28 S.W.2d 1052; Madding v. State, 118 Ark. 506, 177 S.W. 410; Cope v. Heath, 8 Cir., 108 F.2d 854, 855–856.

■■ It is equally well settled that where two vehicles are proceeding along a highway in the same direction the driver of the leading vehicle has the superior right to the use of the road, and the driver following must exercise ordinary care to respect that right. Jones v. King, 211 Ark. 1084, 204 S.W.2d 548; Acco Transportation Co. v. Smith, 207 Ark. 70, 178 S.W.2d 1011, and Madison-Smith Cadillac Co. v. Lloyd, 184 Ark. 542, 43 S.W.2d 729. Thus, it is clear that when Miss Beaty reduced the speed of her vehicle so as to permit the Harris car to make the left turn, and gave an appropriate signal of her action as she was required to do under the provisions of section 75–618(c) of the Arkansas Statutes, McCurdy owed her a correlative duty to use ordinary care to respect her signal and avoid colliding with her.

■ In addition, McCurdy had no right to operate the tractor-trailer on the highway unless it was equipped with adequate brakes in good working order, including an emergency brake capable of holding the combination of vehicles stationary on any grade upon which same might be operated. Section 75–724, Arkansas Statutes. A violation of such statute by McCurdy would constitute evidence of negligence. Brand v. Rorke, 225 Ark. 309, 280 S.W.2d 906.

The evidence disclosed that the Harris car and the Beaty car were both proceeding in plain view along the highway in front of the tractor-trailer. Without undertaking to pinpoint the specific negligent acts or omissions, or combination of such acts or omissions, on the part

of McCurdy which brought it about, the original collision could only have been caused by a failure on the part of McCurdy to keep a lookout, or by a failure on his part to reduce his speed in time to have avoided the accident, or to an insufficiency of brakes of which he was aware or of which he could and should have been aware by the exercise of ordinary care in the observation of his pressure gauge and of the actual operation of the brakes. Under any of those alternatives, or combinations thereof, he was guilty of negligence.

In making this finding the Court does not overlook the testimony of McCurdy that when he left Malvern, some 20 miles south of Benton, on the morning of the accident, his brakes were in good working order, that he had had no trouble with them, and that he had brought his vehicle to an uneventful stop just a short distance from the scene of the first accident. McCurdy was an interested witness and his testimony cannot be viewed as entirely uncontradicted.

■ Turning now to the second accident, the Court is convinced that the brake insufficiency had set in prior to the first accident, and that this fact was known or should have been known to the truck driver. In such circumstances it was plainly negligence for McCurdy to park his vehicle on the down grade in close proximity to the vehicle in front of him, and to trust to the holding power of the hand brake [1] on the tractor and the failing air brakes on the trailer, particularly when he knew that he and one or both of the occupants of the other car would be out on the ground around that vehicle and might well get between the car and the truck just as the deceased did.

In any event, and regardless of the condition of the brakes and the truck driver's knowledge thereof, the Court feels that it was negligence on the driver's part to park his heavily loaded ve-

---

[1]. It has been noted that the emergency brake was not sufficient to hold the vehicle on the downgrade on which it was parked, and in view of the statute that

has been cited McCurdy's operation of the vehicle with an insufficient handbrake is itself evidence of negligence.

hicle as he did without stopping the engine and putting the tractor in gear.

Moreover, section 75–651 of the Arkansas Statutes provides, among other things, that when a motor vehicle is left standing on a perceptible grade the brakes shall be effectively set, and the front wheels turned to the curb or side of the highway. Had McCurdy turned the wheels of his vehicle as required by the statute, the tractor-trailer, if it had moved at all, would not have rolled down upon the Beaty car, but would have moved toward the right side of the shoulder, and at the very least Mr. Beaty's chance of escaping injury would have been much enhanced.

### II.

■ There was no evidence as to Mr. Beaty's funeral expenses, and it appears that the fee for the ambulance, amounting to $25, was paid by Miss Daisy Beaty personally. Hence, the only element that can be considered in connection with the claim of the administrator for the benefit of the estate of the deceased on account of the latter's own injuries and damage is the conscious physical pain and mental anguish endured by Mr. Beaty after he was caught between the two vehicles and prior to his death a second or two later. Cf. Chicago, Rock Island & Pacific Railway Co. v. Caple, 207 Ark. 52, 179 S.W.2d 151.

While the deceased was heard to cry out and to groan after the impact, it seems to the Court that probably his distress was more mental than physical, and it was of extremely short duration. There is, of course, no objective yardstick by which his pain, fright, and apprehension can be measured and reduced to dollars and cents. Although the Court recognizes that excruciating pain and anguish can be experienced in a very short space of time, it is clear in this case that a large award for the benefit of the estate would not be justified. The Court finds that fair and reasonable compensation for the deceased's pain, suffering, and mental anguish is $1,000, to be distributed among the children according to the Arkansas law of descent and distribution.

### III.

The deceased was survived by six adult children, all of whom, with the exception of Miss Daisy Beaty, were married at the time of their father's death, and had established homes of their own. The Court finds that each of those children has sustained mental anguish as a result of the death of the decedent, and that each of them is entitled to reasonable compensation therefor under the provisions of Act 255 of the 1957 Arkansas Legislature, Ark.Stats., Cum.Supp., section 27–909.[2]

Although it does not appear that the Supreme Court of Arkansas has yet construed the mental anguish provision of the statute just cited, it has frequently construed Act 68 of 1903 (Ark.Stats., section 73–1813), which provides that all telegraph companies doing business in

2. Prior to the passage of that statute, although a husband had a separate right of action for loss of consortium due to the wrongful death of his wife by virtue of Ark.Stats., section 27–905, and although under the terms of Act 115 of 1949 parents had a right to recover for mental anguish resulting from the wrongful death of a child, there was, in general, no right to recover for mental anguish in death cases. See St. Louis, S. F. Ry. Co. v. Perryman, 213 Ark. 550, 211 S.W.2d 647; Interurban Railway Co. v. Trainer, 150 Ark. 19, 233 S.W. 816; Helena Gas Co. v. Rogers, 98 Ark. 413, 135 S.W. 904, and Little Rock & Ft. Smith Ry. Co. v. Barker, 33 Ark. 350. The 1957 statute under consideration provided, among other things, that in case of wrongful death "the surviving spouse, children, father and mother, brother, sister or persons standing in loco parentis to the deceased (or) persons to whom the deceased stood in loco parentis at the time of the injury which caused the death of the deceased" may recover, in addition to other elements of damage, "for mental anguish resulting from such death." Said statute further provides that the award for the benefit of the next of kin shall be apportioned among the latter by the Court or jury in accordance with the evidence, rather than in accordance with the law of descent and distribution.

the State shall be liable in damages for mental anguish or suffering resulting from negligence on the part of such companies in receiving, transmitting, or delivering messages.[3] And the Court is of the opinion that the principles laid down in the cases decided under the earlier statute are applicable to mental anguish claims arising under the statute now under consideration.

The chief of those principles may be summarized by quoting the following general language appearing in 15 Am.Jur. Damages, section 184:

"The mental anguish suffered, to be the basis for an allowance of damages, must be real and with cause and not merely the result of a too sensitive mind or morbid imagination. It must be some actual distress of mind flowing from the real ills, sorrows, and griefs of life; mental suffering over suppositions or imaginery conditions which do not exist is not a recoverable element."

In addition, the mental anguish recoverable must have resulted proximately and naturally from the conduct or event which gives rise to the right of recovery. St. Louis, I. M. & S. Ry. Co. v. Buckner, 89 Ark. 58, 115 S.W. 923, 20 L.R.A.,N.S., 458. In Western Union Telegraph Co. v. Bickerstaff, supra, it was held that the award must be reasonable in the light of all of the relevant factors disclosed by the evidence, which, in the instant case, would seem to include the respective ages of the deceased and the beneficiaries and the degrees of intimacy and contacts between the deceased and the respective beneficiaries.

As indicated, Miss Daisy Beaty made her home with her father. At the time of the accident she was forty-three, years of age and was not in good health. It does not appear that she has ever been married and, in view of her age and condition, it is highly unlikely that she ever will be. She was devoted to her father, misses him very much, and is acutely conscious of his absence from the home. On the other hand, it must be remembered that at the time of his death Mr. Beaty was more than 80 years of age, and his daughter could not have reasonably expected to have him with her for many more years.

Under all the facts and circumstances disclosed by the evidence, the Court finds that $1,200 is reasonable compensation for Miss Daisy Beaty on account of the death of her father.[4]

The remaining children of the deceased, three sons and two daughters, have also suffered mental anguish on account of the death of their father and will continue to do so to some extent; but the Court feels that their grief has not been so intense, nor is it likely to be so long enduring as is that of Miss Daisy Beaty, primarily because all five of them are mature married people and have their work or other interests to occupy their time and minds. The Court finds that $600 should be awarded to each of them.

3. See Western Union Telegraph Co. v. Flannagan, 113 Ark. 9, 167 S.W. 701; Mackay Telegraph & Cable Co. v. Vaughan, 111 Ark. 504, 163 S.W. 158, 51 L.R.A.,N.S., 404; Howard v. Western Union Telegraph Co., 106 Ark. 559, 153 S.W. 803; Western Union Telegraph Co. v. Garlington, 101 Ark. 487, 142 S.W. 854, 49 L.R.A.,N.S., 300; Western Union Telegraph Co. v. Bickerstaff, 100 Ark. 1, 138 S.W. 997; Western Union Telegraph Co. v. McKenzie, 96 Ark. 218, 131 S.W. 684, 49 L.R.A.,N.S., 296; Western Union Telegraph Co. v. Bangs, 94 Ark. 44, 125 S.W. 1012; Western Union Telegraph Co. v. Archie, 92 Ark. 59, 121 S.W. 1045; Western Union Telegraph Co. v. Oastler, 90 Ark. 268, 119 S.W. 285, 49 L.R.A.,N.S., 325; Western Union Telegraph Co. v. Hanley, 85 Ark. 263, 107 S.W. 1168; and Western Union Telegraph Co. v. Shenep, 83 Ark. 476, 104 S.W. 154, 12 L.R.A.,N.S., 886.

4. The Court is concerned at this point solely with the mental anguish occasioned by the death of Mr. Beaty and not with any mental anguish which Miss Beaty may have endured either on account of having witnessed that death or on account of her own injuries.

## IV.

■ Turning now to the individual claim of Miss Beaty in No. 3697, the evidence disclosed that prior to the accident her health and physical condition were far from good. She had undergone major surgery on more than one occasion prior to the accident, and she had suffered for a long time with a congenital condition in her lumbar spine. The medical evidence introduced by the parties was lengthy, and no good purpose would be served by reviewing it in detail. Suffice it to say, the Court finds from a preponderance of the evidence that as a result of the first impact involved in this case Miss Beaty received a whiplash injury to her cervical spine, and that the same impact to some extent aggravated her pre-existing lower back condition.

■ While Miss Beaty has suffered some pain and mental anguish from her own injuries, it appears to the Court that her injuries were not, and the disability properly attributable to them is not, permanent in nature. Her present condition, disclosed by the evidence, is much more serious, both mentally and physically, than would normally be expected to result from the physical injuries received by her. According to practically all of the evidence, her present suffering is very largely psychosomatic in nature and due to the nervous shock or psychic trauma which she suffered as a result of seeing her father injured and killed, from hearing his cry and groans, and from hearing his body crushed under the wheels of the defendants' vehicle. Thus a question is presented as to whether that psychic trauma with its attendant mental distress and the aggravation of her physical condition flowing therefrom are proper elements for consideration in measuring her damages.

Plaintiff cites Kaufman v. Western Union Telegraph Co., 5 Cir., 224 F.2d 723, in which it is pointed out that the American law with regard to the right of a person to recover for emotional distress and its physical repercussions is in a state of uncertainty and flux, and that certain liberalizing tendencies are to be observed. See also the Restatement of Torts, 1948 Supplement, section 46; 52 Am.Jur. Torts, sections 46 and 55; and Annotation in 64 A.L.R.2d 100–151. It is necessary to keep in mind, however, that in this diversity case the function of this Court is to ascertain and apply the law of Arkansas. The Court is persuaded that under Arkansas law, at least as it now exists, Miss Beaty's emotional distress presently under consideration and the effect of that distress upon her physical and mental condition cannot be considered as an appropriate element of damage.

■ It is a well settled principle of Arkansas law that no recovery can be had for negligently inflicted mental anguish, fright, shock, or grief, unless the same is produced by a physical injury, and that rule extends to physical symptoms resulting from the emotional shock in question. Chicago, Rock Island & Pacific Railway Co. v. Caple, supra; Wilson v. Wilkins, 181 Ark. 137, 25 S.W.2d 428; Rogers v. Williard, 144 Ark. 587, 223 S.W. 15, 11 A.L.R. 1115; St. Louis, I. M. & S. Ry. Co. v. Bragg, 69 Ark. 402, 64 S.W. 226; Texarkana & Ft. Smith Ry. Co. v. Anderson, 67 Ark. 123, 53 S.W. 673. Thus, Arkansas is what is known as an "impact state," although the injury or "impact" may be constructive. See Arkansas Motor Coaches v. Whitlock, 199 Ark. 820, 136 S.W.2d 184.

In Texarkana & Ft. Smith Ry. Co. v. Anderson, supra, the trial court instructed the jury that in the absence of some physical injury the plaintiff's mental anguish and anxiety at being subjected to the presence on a train of a crowd of drunken, boisterous men was not compensable. In approving this instruction the Arkansas Supreme Court said (at page 129 of 67 Ark., at page 674 of 53 S.W.):

"* * * The question raised * * * is simply the oft-recurring question, whether or not one can recover for mental suffering without showing some personal injury as a basis of the action, independent of mental suffering, an incident of the

main cause of action, and, of course, dependent upon it. * * *"

That question was answered in the negative.

No physical after effects of mental anguish were involved in Anderson, but such effects were present in St. Louis, I. M. & S. Ry. Co. v. Bragg, supra, in which the Court said (at pages 404–405 of 69 Ark., at page 226 of 64 S.W.):

"* * * Plaintiff, indeed, bases her right to recover in this case not on any immediate physical injury suffered by reason of the negligence of the defendant, but upon fright, and subsequent prostration and ill health caused by the fright. But the right to recover for a physical injury resulting from fright or mental anguish only would seem to depend on whether a recovery could be had for such fright and mental anguish.

"We held, in a recent case, there could be no recovery at law for mental pain and anguish unaccompanied by physical injury and caused by unintentional negligence. Peay v. Western Union Telegraph Co., 64 Ark. 538, 544, 43 S.W. 965, 39 L.R.A. 463. And in a case where the law allows no recovery for the mental anguish or fright it would seem logically to follow that no recovery can be had for the consequences or results of the fright; such consequences, as stated by the court of appeals of New York, going merely to show the degree of the fright, and the extent of the damages. Mitchell v. Rochester Railway Co., 151 N.Y. 107, 45 N.E. 354, 34 L.R.A. 781; Spade v. Lynn & Boston R. Co., 168 Mass. 285, 47 N.E. 88, 38 L.R.A. 512."

Conceding that factwise Miss Beaty's case does not fall squarely within any of the Arkansas cases heretofore cited, and assuming without deciding that if Mr. Beaty had been killed and his daughter injured in the same accident the Supreme Court of Arkansas would permit a recovery for her mental distress and its physical results flowing from her having seen the occurrences, she is confronted with the difficulty that she was injured in one accident and her father was killed as a result of another which, although following the first very closely, was, nevertheless, entirely separate and distinct from it. The physical impact upon the plaintiff was caused by the negligence of McCurdy in the operation of the truck upon the highway, whereas the injuries to and death of Mr. Beaty were caused by subsequent negligence of McCurdy in the parking and securing of the vehicle. That negligence was not directed at Miss Beaty, and there is no evidence that it put her in any fear for her own safety. Cf. Baltimore & Ohio R. Co. v. McBride, 6 Cir., 36 F.2d 841.

Passing now to the remaining elements of Miss Beaty's claim, it is noted that she testified that her total medical expense, including drugs and expenses incident to traveling to see her physicians, has amounted to approximately $3,000. Miss Beaty was able to identify specific payments or obligations totaling $1,754. The Court is not convinced, however, that all of her medical expenses were reasonable and necessary or that all of them were properly attributable to her physical condition. The Court finds that the sum of $1,000 constitutes fair and reasonable compensation for Miss Beaty's medical expense.

Miss Beaty's car was damaged to the extent of $150 for which she should be compensated, as well as for the $25 paid by her for the services of the ambulance in transporting her father's body from the scene of the accident to the funeral home.

Miss Beaty should be compensated for that portion of the time she lost from her work which is fairly attributable to her own injuries and not to any aggravation thereof resulting from having witnessed her father's death. The Court is of the opinion that she is entitled to such compensation without regard to the fact that while she was off

duty payments were made to her by her employer on account of her annual and sick leave. 15 Am.Jur. Damages, section 200; Tallant Transfer Co. v. Bingham, 4 Cir., 216 F.2d 245; Cunnien v. Superior Iron Works Co., 175 Wis. 172, 184 N.W. 767, 18 A.L.R. 667; Shea v. Rettie, 287 Mass. 454, 192 N.E. 44, 95 A.L.R. 571; Rigney v. Cincinnati Street Railway Co., 99 Ohio App. 105, 131 N.E.2d 413, 52 A.L.R.2d 1443; Annotations in 18 A.L.R. 678, 95 A.L.R. 575, and 52 A.L.R.2d 1451. Cf. Manila School Dist. No. 15 of Mississippi County v. Sanders, 226 Ark. 270, 289 S.W.2d 529; Hall v. Jones, 129 Ark. 18, 195 S.W. 399, and Gates v. School Dist. of Ft. Smith, 57 Ark. 370, 21 S.W. 1060.

It has not been easy for the Court to determine how much of Miss Beaty's present condition and how much of her physical pain and mental anguish, expenses, and loss of earnings are due to her own injuries, and how much results from the uncompensable psychic trauma which has been discussed. But, from a careful consideration of all of the evidence, the Court finds that the sum of $3,250 will constitute fair and reasonable compensation for all of her injuries and damages resulting from the negligence of defendant McCurdy.

In view of the foregoing it is by the Court considered, ordered, and adjudged:

That in Case No. 3696 the plaintiff, Girdle Beaty, as administrator of the estate of James Daniel Beaty, deceased, do have and recover of the defendants, Buckeye Fabric Finishing Co. and William McCurdy, jointly and severally, the sum of $1,000 for the benefit of the estate of James Daniel Beaty, and the sum of $4,200 for the benefit of the next of kin of said deceased, together with all his costs in said case. Further ordered, that the award for the benefit of the next of kin be apportioned among them as follows: Miss Daisy Beaty, $1,200; Girdle Beaty, $600; Virgil Beaty, $600; Wingfield Beaty, $600; Mrs. Eula Beaty, $600; and Mrs. Claudia New, $600.

That in Case No. 3697 the plaintiff, Daisy Beaty, do have and recover of the defendants aforesaid, jointly and severally, the sum of $3,250, together with the costs of the action.