ARKANSAS MOTOR COACHES, LTD., INC. v. WHITLOCK.

4-5744 136 S. W. 2d 184

Opinion delivered January 15, 1940.

*Huie & Huie* and *Miles & Amsler,* for appellant.

*Joseph Callaway* and *Lyle Brown,* for appellee.

HOLT, J. Appellant brings this appeal from a judgment against it in the Clark circuit court in the sum of $250 for damages alleged to have been sustained by appellee as a result of being wrongfully ejected from appellant's bus at Arkadelphia, Arkansas.

It is alleged in appellee's complaint that on March 25, 1939, after having first procured a ticket to Gurdon, Arkansas, at appellant's station in Arkadelphia, he boarded appellant's bus and presented his ticket to the bus driver, which was accepted; that at the driver's request appellee took a small seat next to the driver's seat; that the bus driver, without any reason therefor, maliciously and willfully shouted to appellee that he, the driver, was going to throw appellee off the bus; that the driver grabbed him by the right arm, pulled him, appellee, up from his seat and escorted him from appellant's bus, in the presence of the passengers, which caused appellee embarrassment, humiliation and to suffer mental anguish.

It is further alleged in the complaint that the bus driver escorted appellee to appellant's ticket office,

ordered the ticket agent to refund appellee's fare, telling said agent, ''I don't need him on my bus''; that said driver ''returned to his bus and drove off, leaving plaintiff stranded and without means of transportation to his home several miles west of Gurdon.

''That after unsuccessfully searching for a ride to Gurdon, plaintiff started walking to Gurdon where he was scheduled to make connections with another car which would leave Gurdon at five o'clock p. m. and take plaintiff to his home. Plaintiff was forced to walk approximately two miles before he was invited to ride and in the meantime he was caught in a downpour of rain, from which he contracted a cold and a sore throat and the 'flu.' Plaintiff arrived at Gurdon too late to catch his connection there and was forced to begin walking home over a muddy country road after dark and did walk about three miles between Gurdon and his home.'' He prayed for damages in the sum of $1,262.

Appellant answered denying every material allegation set out in the complaint and further answering alleged that at the time appellee presented his ticket to the bus driver and sought transportation on the bus all the available seats on the bus were taken and appellee was given permission to sit on the box covering the projection of the motor if he so desired; that appellee objected to sitting on the covering whereupon the bus driver invited him to go with him into the ticket office that he might return his money for the ticket, and that appellee accepted a refund of the fare, but refused to surrender the ticket.

Upon a trial to a jury a verdict was returned in favor of appellee in the sum of $250. From the judgment on the verdict comes this appeal.

The facts as presented by this record, stated in their most favorable light to appellee, are to the following effect:

Appellee, a young man of 29 years of age, bought his ticket at appellant's station at Arkadelphia, Arkansas, to ride to Gurdon. The driver accepted his ticket, he boarded the bus, and quoting appellee's testimony:

"A. He taken the ticket and I started in the bus to sit down, and he said, 'Say, you will have to sit on this little box if you don't mind,' and I said, 'Yes, sir'—anyway, there was a kid sitting on another seat with his feet run out in front of me and I sat there a minute and I said to this boy in front of me, 'Say, get your feet out of the way or I am liable to skin my knees and I will be suing the company like the man did that bumped his elbow on a suitcase.' The driver was sitting down and he got up and said, 'Come on and get off,' and he caught me by the arm and led me down the steps and says, 'Hand me your ticket.' "

Here we quote further from appellee's testimony, as abstracted in appellant's brief, as follows: "I was sitting down when he caught me by the arm. The bus was crowded. I was just talking to that kid like I would to somebody else in the seat. I said, 'Move your feet over or I am liable to skin my knees.'

"I handed him (meaning the bus driver) the ticket. He punched it and we walked in to the ticket agent and he said, 'Give this man his money back. I don't need him on my bus.' He gave me the money—thirty cents.

"I left the bus station. I came uptown and tried to catch a ride home. I met Mr. Will Green and asked him about going with him and he said he was loaded. Then I went to the mule barn and tried to catch a truck and couldn't. It was raining and when it quit raining, I started home. I couldn't catch a ride until I got on the highway. I am married.

"I live a quarter of a mile from my nearest neighbor on a country road. If I caught the ride on the bus, I was going out with Paul Clark from Gurdon. He is a farmer close to me.

"I was anxious to get back to attend to my stuff and be with my wife before dark. I walked out to the 'Two Cent Less' station and it started raining. I walked on in a drizzle and some fellows came along and picked me up and carried me to Gurdon. When I got there, I caught a ride with Mr. Grady Clark out to his house, and I walked from there to my home. It was between sundown and dark when I left Gurdon. My health was good.

I haven't taken any medicine in about three years. I got up Sunday morning and my throat was sore. I couldn't swallow and I taken some soda water and coal oil and sugar. But I kept going. I was up at Arkadelphia again Tuesday. I taken severe pains and went around to the doctor. I don't remember the doctor's name. Dr. Page, he examined me and said I had the flu. The next morning I wasn't able to get up. I had Dr. Alford from Okolona the Sunday after my discharge from the bus. I was confined to my home eight or ten days. I wasn't in. bed all that time. I was embarrassed in the presence of the passengers.''

Appellee's witness, Burl Cornelius, a passenger on the bus at the time, testified that the bus driver took appellee by the arm and led him off the bus.

The bus driver, L. J. Long, testified that after he had refused appellee permission to ride he accepted another passenger, one Freeman, and gave him a seat on the bus which he admitted was a safe place for Freeman to ride.

Appellant first insists that the evidence is not sufficient to take the case to the jury. We think it was.

In the instant case the appellee did not voluntarily surrender his ticket or his right to be carried as a passenger on appellant's bus. He insisted on his right to be carried as a passenger and offered to sit where directed by the bus driver. Under the facts, we think, there was no cause or reason shown to warrant the bus driver in evicting appellee from the bus in the manner shown and that his act in laying his hands on appellee, taking him by the arm, leading him from the bus, thus humiliating and embarrassing him in front of the passengers, constituted an actionable wrong for mental anguish for which appellant would be liable.

While the rule in this state is, as stated in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Taylor,* 84 Ark. 42, 104 S. W. 551, 13 L. R. A., N. S., 159, that recovery of damages to compensate for mental anguish unaccompanied by actual or constructive physical injury cannot be had, the rule is different where there is physical injury accompanying the mental anguish.

In *Chicago, R. I. & P. Ry. Co.* v. *Mizell,* 118 Ark. 153, 175 S. W. 396, this court in discussing the question as to what constituted physical injury necessary to warrant recovery for mental pain and suffering, quoting from the case of *Chicago, R. I. & P. Ry. Co.* v. *Moss,* 89 Ark. 187, 116 S. W. 192, said:

"The 'other element of recoverable damages' referred to, in the excerpt of the opinion above quoted, was clearly indicated in the preceding part of the opinion, wherein it was stated that damages for mental suffering may be recovered where there is a physical injury, because the two are so intimately connected that both must be considered on account of the difficulty in separating them. This is the foundation for permitting a recovery for mental suffering; and without this necessary connection between physical injury and the mental suffering, there can be no recovery for the mental suffering. There are many cases in the books where there is a constructive physical injury, such as duress, ejection from trains, etc., where there is no physical violence, but an actual restraint or coercion of the person. In such cases, and possibly others, it would not be sound to hold that, merely because the finger was not laid upon the lapel of the coat, there can be no recovery for the wrong done, including the mental suffering resulting from such duress or coerced ejection. In order not to exclude such cases, the clause which is made the basis for this suit was added; but it was not intended to permit any disconnected recoverable element to be used as a post to which to hitch mental suffering."

In the instant case, while it appears that appellee suffered a constructive physical injury only in the process of being forcibly evicted from the bus by appellant's driver in the manner indicated the jury had the right to consider any mental anguish suffered by him in estimating the amount of the damages.

Appellee testified that upon inquiry he learned that he could not get another bus out for Gurdon until around nine p. m. of the day in question; that he tried to catch a ride home but was unsuccessful; and that he was anxious to get home before dark. In his effort to reach his home he was caught in a rain and contracted a cold,

an illness that confined him to his home for eight or ten days under the care of a physician.

Under facts which we think more favorable to appellant than in the instant case, this court in *Missouri Pacific Transportation Company* v. *Schmitz*, 197 Ark. 903, 125 S. W. 2d 448, held (quoting headnote) : ''Where appellee, a laboring man, on being refused transportation on his ticket over appellant's bus line from M. to LaG., a distance of nine miles, undertook to walk that distance over a road which was graveled in part and blacktop in part, it could not be said as a matter of law that he, though 62 or 63 years of age, was imprudent in undertaking the journey, and that he was thereby barred from recovering for the injuries sustained in undertaking the walk.''

In an annotation at page 1339 of 52 A. L. R., the text-writer says: ''And where a railroad company has negligently failed to transport a passenger, or to provide for his transportation, to his destination in accordance with the contract of carriage, and has left him at an intermediate point, the damages for an injury sustained by him by being caught in a storm of sand and rain after leaving the railroad depot at that point, are not, as a matter of law, too remote to be recovered in an action against the railroad company. *Pickens* v. *South Carolina & G. R. Co.*, 54 S. C. 498, 32 S. E. 567.''

Appellant next contends that the court erred in giving appellee's instruction No. 1 to which specific objections were made. After a careful review of this instruction, however, it is our view that it is a correct declaration of the law as applicable to the issues presented in this case, and that the court did not err in giving it. We think it would serve no useful purpose to set out this instruction here.

Appellant next complains of error in the trial court's refusal to give its requested instruction No. 10, which is as follows: ''You are told, as a matter of law, that the ordinary unlimited ticket sold by the defendant is not a contract to transport the passenger on any particular bus or schedule, and that it does not constitute a breach

of contract when a passenger having a ticket cannot be accommodated by reason of the limited capacity of the bus.''

The record reflects, however, that the court at the request of appellant gave nine instructions, and after a careful review of these instructions it is our view that appellant's requested instruction No. 10 above, although a correct declaration of the law, was fully covered in instructions Nos. 7, 8 and 12, given at appellant's request. We, therefore, find no error here.

It is finally urged by appellant that the verdict is excessive. We think, however, that the verdict of $250 returned by the jury in this case under the facts as reflected by the record, cannot be said to be excessive, and certainly the amount does not indicate passion or prejudice on the part of the jury.

On the whole case, finding no errors, we conclude that the judgment should be affirmed, and it is so ordered.

SMITH, C. J., and Mr. Justice McHANEY dissent.