M.B.M. COMPANY, INC. *v.* Shirley Ann COUNCE

79-313                                                    596 S.W. 2d 681
Supreme Court of Arkansas
Opinion delivered March 24, 1980

---

*Parker & Henry,* for petitioner.

*Barrett, Wheatley, Smith & Deacon,* for respondent.

JOHN A. FOGLEMAN, Chief Justice. Shirley Ann Counce appealed from a summary judgment against her in her suit against M.B.M. Company, her former employer, to recover damages for wrongful discharge and for intentional infliction of emotional distress. Because we find a material issue of fact as to intentional infliction of emotional distress, we affirm the action of the Court of Appeals reversing the judgment and find no error in that court's holding.

In her complaint, respondent Counce alleged that, on February 2, 1977, she was "laid-off" from her employment by petitioner at Coleman's Bar-B-Q, its place of business in West Memphis, supposedly because her services were no longer needed but that she was subsequently told by an employee of petitioner that she must submit to a polygraph examination in connection with a money shortage on the last day she worked. She further alleged that she passed the test and demanded her wages for her last 17 hours of work, but when she received her pay check it amounted to only $.081 after an unexplained deduction of $36, which was later explained as being her share of the money which was missing on February 2. She asserted that these actions by petitioner were an intentional course of conduct designed to cause severe emotional distress, and that her termination was in retaliation for alleged stealing and a breach of the employment relationship and in violation of public policy.

M.B.M. moved for summary judgment on the basis of the discovery deposition of Ms. Counce and those of Jerrell Coleman Moss, area supervisor for M.B.M., who was in charge of the West Memphis store, and Porter Moss, president of M.B.M. Since we are considering a summary judgment, we will view this evidence in the light most favorable to Shirley Ann Counce, against whom it was rendered.

Ms. Counce was employed by M.B.M. at the West Memphis store on January 17, 1977. The store manager was Jan Hylander. Between the closing of the business on February 1, 1977 and its reopening the following day, $99.00 in money and checks were missing. Ms. Counce had been assigned to the cash register on that evening. She had no knowledge the money was missing until the store manager called her on the morning of February 2. When Ms. Hylander asked her if she had put all the money and checks together as she was supposed to do, Ms. Counce answered in the affirmative. Later Ms. Hylander called Ms. Counce and told her that she was laid off because Ms. Hylander had too much counter help. Shortly thereafter, Ms. Counce called and asked Ms. Hylander about her pay, but was told that she would have to take a polygraph test before the company would release her check. She went to Memphis and sub-

mitted to the test, which was arranged by Coleman Moss. The polygraph operator told her that she had passed and that M.B.M. would have to release her paycheck. The next day she picked up her check for the previous week's work. A week later she picked up her check for the last 17 hours she had worked. When she noticed that it was for only $0.81, she went back to Coleman's Bar B-Q and asked Jan Hylander why it was for that amount but was told that she whould have to talk to Coleman Moss. Ms. Counce then called him on the telephone, asked why her money was withheld and told him that she had passed the test and needed her money. Coleman Moss responded, "I need mine, too."

Ms. Counce applied for unemployment benefits and gave the same reason for her discharge that she had been given by Jan Hylander. She was denied benefits because the employer had stated that she was laid off because of numerous customer complaints, a bad attitude and violation of company rules and policies. At the time Ms. Counce was discharged, M.B.M. was advertising for counter help in the West Memphis newspaper.

Coleman Moss stated that the reason Ms. Counce was dismissed was because there were two customer complaints about her service, but he did not know the name of either customer. Ms. Counce never had any problems or arguments with customers. The deduction from her pay was one-third of the missing money and the president of the company made the decision to withhold it. After an investigation by the Labor Department, this amount was paid to Ms. Counce. Coleman's Bar B-Q did not have excess counter help when she was discharged. No one ever said that Ms. Counce had stolen the missing money.

The written employment agreement between Ms. Counce and the company provided that she could be discharged at any time, without notice. In that contract, she consented, if she were employed, to submit to a polygraph test at any time during her employment and she understood that employees of Coleman's might be required to take such tests.

Ms. Counce first argues that there was a breach of the employment relationship in violation of public policy. This is but another way of saying that M.B.M. breached the contract of employment. She relies to some extent upon cases holding that discharge of an employee for filing a worker's compensation claim, for refusing to "go out" with her foreman, for going on jury duty, or for refusal to commit perjury, is a breach of contract. She contends that, upon the authority of such cases, she has stated a cause of action in contract. We might well agree with Ms. Counce if there was any indication that she was discharged for exercising a statutory right, or for performing a duty required of her by law, or that the reason for the discharge was in violation of some other well established public policy. That simply is not the case here. Since it is not, our holdings in such cases as *Miller v. Missouri Pac. Transportation Co.,* 225 Ark. 475, 283 S.W.2d 158, lead us to hold that Ms. Counce has failed to establish a cause of action for breach of contract. In that case, the court relied upon the rule that, where no definite term of employment is specified in the contract of employment, and in the absence of other circumstances controlling the duration of the employment, the contract is terminable at will of either party. That rule has greater impact when, as here, the contract specifically authorizes the employer to terminate the contract at will. In the absence of violation of some clearly established public policy, we join the Supreme Court of Utah in declining an invitation to remake the contract between the parties or to somehow devise a basis for relief whenever one party to a contract can show injury flowing from the exercise of a contract right by the other. *Mann* v. *American Western Life Ins., Co.,* 586 P.2d 461 (Utah 1978).

This is not a case in which there was injury resulting from a physical impact, so appellant's right to recover damages for emotional distress depends upon the existence of a cause of action to recover these damages when distress is not merely "parasitic" as an element of damages for physical injury. The idea that a recovery should be permitted in some cases of this sort is not novel. In 2 Harper & James, The Law of Torts 1033, § 18.4 (1956), the authors said:

The more recent trend, in the British Empire as

well as America, has been away from this mechanical requirement of impact. Where defendant's conduct is intentional, or willful and wanton, or constitutes a technical trespass or other legal wrong (which is complete without a showing of damage), recovery has often been allowed for emotional disturbance and its consequences. This has been so for a long time, but there has been an extension of liability along this line in recent years. ***

In a footnote, the authors state that the oldest example was a case decided in 1348.

The concept of allowing recovery of damages for mental distress and injured feelings is not completely new in Arkansas. We upheld a recovery for mental suffering which was unaccompanied by any physical injury in *Wilson* v. *Wilkins,* 181 Ark. 137, 25 S.W.2d 428. Although we recognized that in actions for negligence there can be no recovery for mental suffering where there has been no physical injury, we said:

The rule is well settled in this state, but it has no application to willful and wanton wrongs and those committed with the intention of causing mental distress and injured feelings. Mental suffering forms the proper element of damages in actions for willful and wanton wrongs and those committed with the intention of causing mental distress.

Our holding in *Wilson* is not controlling authority for a holding that Ms. Counce has a cause of action against M.B.M., because the actionable wrong recognized in that case was wilfull intimidation of the plaintiff's rights of personal security and of private property. The cause of action was based upon threats of the defendants that, if the plaintiff did not leave the community in which he lived, they would put a rope around his neck. Later in *Geyer* v. *Western Union Telegraph Co.,* 192 Ark. 578, 93 S.W.2d 660, we again recognized the rule that, under the common law, there can be no recovery for fright or mental anguish caused by mere negligence, but that a recovery may be had where fright or mental anguish is caused by wilful conduct. In that case

damages for mental anguish and fright were not sought, but we upheld a recovery for *physical* pain and injury attributable to the inability of the plaintiff to attend her brother's funeral because she was misled by an incorrect transmission of a death message.

Our statement in *Wilson* either overlooked or disregarded our previous holding in *St. Louis, I. M. & S. Ry. Co.* v. *Taylor,* 84 Ark. 42, 104 S.W. 551, 13 LRA (n.s.) 159, the very case distinguished in the opinion. We actually held in *Taylor* that there could be no recovery for mental anguish unaccompanied by physical injury or some other recoverable elements of damage and that an independent action for damages for mental anguish and humiliation would not lie, even though the violation of duty made the basis of the complaint was wilful. Authorities supporting this view were set out in the *Taylor* opinion and the same rule was followed in such subsequent cases as *Chicago, Rock Island & Pacific Ry. Co.* v. *Moss,* 89 Ark. 187, 116 S.W. 192, and *Pierce* v. *St. Louis, Iron Mt. & S. Ry. Co.,* 94 Ark. 489, 127 S.W. 707. In the latter case, we explicitly declined an invitation to overrule *Taylor* in this respect.

We had also held that the use of impolite and insulting language which caused humiliation and mental suffering was not actionable where there was no physical injury, even though we recognized that there are cases where there could be recovery for mental suffering coupled with a "constructive physical injury," such as duress or coercion, where there is no physical violence but an actual restraint or coercion. *Chicago, Rock Island & Pacific Ry. Co.* v. *Moss,* 89 Ark. 187, 116 S.W. 192. We followed this constructive physical injury theory in *Arkansas Motor Coaches, Inc.* v. *Whitlock,* 199 Ark. 820, 136 S.W.2d 184, holding that the act of a bus driver in laying his hand on a passenger in leading him from the bus, humiliating and embarrassing him before the other passengers, constituted an actionable wrong for mental anguish for which the coach company would be liable. We had also held that mental anguish was not a recoverable element of damages when three plaintiffs were unable to attend the funeral of a close relative due to their being prevented from boarding a train, because we could find no causal connection between the men-

tal anguish suffered solely because of their being delayed and the physical pain suffered from illnesses contracted by the plaintiffs as a consequence of the same act of the defendant railroad. *Chicago, Rock Island & Pac. Ry. Co.* v. *Mizell,* 118 Ark. 153, 175 S.W. 396.

Wittingly or unwittingly, we departed from the parasitic requirement in *Wilson* and there are subsequent holdings by this court that where the defendant's action constituting the wrong is wanton or wilful, there may be a recovery for humiliation and mental suffering. When we held in *Rogers* v. *Williard,* 144 Ark. 587, 223 S.W. 15, 11 ALR 1115, that there could be recovery for bodily pain and suffering resulting from fright caused by a wilful wrong, we pointed out that we had not overruled *St. Louis Iron Mt. & S. Ry. Co.* v. *Bragg,* 69 Ark. 402, 64 S.W. 226, 86 Am. St. Rep. 206 in *Taylor, Moss* or *Pierce.* We found that it was inferable from *Bragg* that there could be recovery for bodily injuries from fright caused by a wilful tort or wanton wrong. We moved a little further toward the rule relied upon by respondent in *Erwin* v. *Milligan,* 188 Ark. 658, 67 S.W.2d 592, where we held that a married woman could recover damages for shock to her moral sensibilities and ideas of decency, nervous collapse, pain, anguish, humiliation and her physical pain and suffering and impairment of health attributable to a miscarriage because of physical shock, all of which were caused by indecent proposals made to her by the defendant. We did say in *Erwin* that there could be a recovery of damages for mental pain and anguish caused by wilful or intentional conduct, citing a textbook statement that damages are recoverable for mental suffering consisting in a sense of wrong or insult, indignity, humiliation or injury to the feelings where the suffering is the result of a wanton or intentional trespass on the person of a woman. We made no reference to *Davis* v. *Richardson,* 76 Ark. 348, 89 S.W. 318, in which we had reversed a judgment in favor of a female because she had been permitted to recover damages on account of indecent and insulting proposals made to her by a male, because she had suffered no physical injury.

Although we had never held that there could be a recovery for emotional or mental distress or mental suffering

in the absence of a physical injury either accompanying the mental suffering or resulting from it, we were led to say by way of dictum in *Chicago, Rock Island & Pacific Ry. Co. v. Caple*, 207 Ark. 52, 179 S.W.2d 151, that where the action of the defendant is wanton or wilful there may be a recovery for humiliation and suffering without any physical injuries, citing *Erwin, Rogers,* and *Lyons v. Smith,* 176 Ark. 728, 3 S.W. 2d 982, none of which is outright authority for the statement. In *Lyons,* there had been a recovery of actual damages for loss of use of the plaintiff's property and of exemplary damages for humiliation and mental suffering.

It was not until we decided *Olan Mills, Inc. v. Dodd,* 234 Ark. 495, 353 S.W. 2d 22, that we actually sustained an award for humiliation, embarrassment, mental anguish and loss of weight from worry and lack of sleep. There we relied upon the dictum in *Caple* for stating that, in some instances, we had held there may be recovery for humiliation and mental suffering in the absence of any physical injury. We held that there might be such a recovery in an action for invasion of privacy "just as in cases of wilful and wanton wrong." It must be acknowledged, however, that one of the elements supporting the plaintiff's recovery in that case was a physical factor, i.e., loss of weight resulting from worry and lack of sleep, another physical manifestation.

We carried the constructive physical injury theory to its ultimate limits in holding that a complaint of a married woman seeking damages for worry, humiliation, distress of mind, public shame and degradation, by reasons of the actions of a hotel manager in wrongfully ordering her out of the room to which she and her husband had been assigned and out of the hotel by insulting and abusive language falsely imputing adultery to her, stated a cause of action. *Stevenson v. John J. Grier Hotel Co.,* 159 Ark. 44, 251 S.W. 355. The constructive physical injury was based upon her leaving the hotel before restraint and coercion by the manager became actual rather than constructive.

The evolutionary process demonstrated by our own decisions culminating in such holdings as those in *Wilson, Rogers, Erwin, Caple* and *Olan Mills,* caused Prof. William T.

Prosser to say, in 1939, that it was time that the courts recognize that they had created a new tort. Prosser, Intentional Infliction of Mental Suffering: A New Tort, 37 Michigan Law Review 874. He theorized that there was no necessity that a tort have a name. According to him, the new tort consisted of intentional, outrageous infliction of mental suffering in the extreme form and that it resembled assault. He pointed out that, in spite of the fact that mental anguish had been recognized in early assault cases, the law had been reluctant to accept interest in peace of mind as entitled to independent legal protection. He described the matter dealt with in this new tort as outrageous conduct of a kind especially calculated to cause serious mental and emotional disturbance. Prof. Prosser pointed out that in many cases in which recovery for mental suffering was permitted as parasitic damage, that element was the only substantial damage actually sustained. Our cases are certainly illustrative of this statement. Prof. Prosser pointed out that the courts had strained (as this court certainly has) to find a technical battery, an assault, a false imprisonment, a trespass or even an invasion of the right of privacy "as a bare excuse" to permit recovery for mental injury, when it was the only substantial damage suffered. Chief Judge Henley, after reviewing our cases, including *Caple, Wilson, Rogers,* and *Bragg,* in *Beaty* v. *Buckeye Fabric Finishing Co.,* 179 F. Supp. 688 (E.D. Ark., 1959), correctly concluded that Arkansas was an "impact" state, even though the impact could be constructive.

The California Supreme Court took the step recommended by Prof. Prosser in *State Rubbish Collectors Ass'n.* v. *Siliznoff,* 38 Cal. 2d 330, 240 P.2d 282 (1952). Justice Traynor, speaking for the court, reviewed the evolutionary process by which the interest in mental and emotional tranquility and freedom from mental and emotional disturbance was converted from a thing of insufficient importance to require others to refrain from conduct intended to cause such a disturbance, to the exact opposite, so that conduct intended to invade freedom from severe emotional distress is now tortious. This transition was also reviewed in *George* v. *Jordan Marsh Co.,* 359 Mass. 244, 268 N.E.2d 915, 46 ALR 3d 762 (1971). The Massachusetts court there recognized the tort but clung to the requirement that there be bodily harm. Only

five years later the Supreme court of Massachusetts said that it had concluded that the extension of its recognition of the existence of a cause of action for intentional infliction of severe emotional distress to cases in which there was no bodily injury was both warranted and desirable. The Supreme Court of Missouri, recognizing that it had previously accepted the view that a right of action does exist for damages for severe emotional distress intentionally caused by conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community, first held that such a cause of action had been stated in *Warrem* v. *Parrish,* 436 S.W.2d 670 (Mo., 1969). The Tennessee Supreme Court recognized the "new tort" in *Medlin* v. *Allied Investment Co.,* 217 Tenn. 469, 398 S.W. 2d 270. *Halio* v. *Lurie,* 15 A.D.2d 62, 222 N.Y.S.2d 759 (1961) is another case in which the intentional infliction of emotional distress has been specifically recognized as a tort.

It was Prof. Prosser's theory that the problems inherent in allowing such recoveries could be more intelligently dealt with if we were to jettison the entire cargo of technical torts with which the real cause of action has been burdened and recognize and treat the intentional infliction of extreme mental suffering by outrageous conduct as a separate and independent tort. Nearly 20 years later, Prof. Prosser was able to say that it appeared to be quite generally recognized that the nameless wrong which was usually called the intentional infliction of mental suffering, or mental anguish, or mental disturbance or emotional distress was entitled to be recognized as a separate tort. Prosser, Insult & Outrage, 44 Cal. L. Rev. 40 (1956). See also, Magruder, Mental & Emotional Disturbance in Torts, 49 Harv. L. Rev. 1033 (1936).

It is not a long step from *Wilson,* where we found some remote actionable wrong or from *Olan Mills,* where we resorted to the right of privacy to support an award to an outright recognition of intentional infliction of emotional distress. In Restatement of Law, Torts 2d, § 46, p. 71 et. seq, the tort is recognized.

We need only to abandon our strained efforts to find a

tort or a theoretical physical impact or injury and the consequent tenuous reasoning in order to justify the award of damages for mental anguish. By doing so, we can and do now recognize that one who by extreme and outrageous conduct wilfully or wantonly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress.

It is of little consequence that different terms are used in describing the element of compensable damages involved as mental suffering, mental anguish, emotional distress, etc. Prof. Prosser sees the term mental anguish comprehensive enough to cover everything from nervous shock to emotional upset, and agrees that the words emotional distress may well be used. In his view they include all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, anger, embarrassment, chagrin, disappointment, worry and nausea. Prosser, Insult & Outrage, 66 Cal. L. Rev. 43 (1956). See also, Restatement, Torts 2d 22, § 46, Comment j. The emotional distress for which damages may be sought must be so severe that no reasonable person could be expected to endure it. It must be reasonable and justified under the circumstances. Liability arises only when the distress is extreme. Restatement, Torts 2d 78, § 46, Comment j.

By extreme and outrageous conduct, we mean conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. See Restatement of the Law, Torts, 2d 72, § 46, Comment d.

Since we recognize the tort of intentional infliction of emotional distress, we conclude that granting a summary judgment was error. Ms. Counce has no cause of action for intentional infliction of emotional distress because of petitioner's action in discharging her, because petitioner is not liable for doing that which it had the legal right to do. Restatement, Torts 2d 76, § 46, Comment g; Prosser, Insult & Outrage, 44 Cal. L. Rev. 40, 49.

M.B.M.'s conduct subsequent to her discharge is a

different matter. Prof. Prosser states that there are cases in which the extreme and outrageous nature of the conduct arises not so much from what is done as from the abuse by the defendant of a relationship with the plaintiff which gives him power to damage the plaintiff's interests. Prosser, Insult & Outrage, supra, 47. Certainly there was such a relationship so long as Ms. Counce was not paid for her work until the time of her discharge. Such a relationship also existed with reference to her entitlement to unemploymet compensation benefits. The facts disclose that, in order to receive her pay, Ms. Counce was forced to submit to a polygraph test after her employment had been terminated and to cause a labor department investigation to collect $36 of the $36.81 due her. There is, at this point, no satisfactory explanation of the basis for withholding this money after she had passed the polygraph test. The different reasons given for her discharge are a significant circumstance, particularly when Coleman Moss' unsatisfactory explanation of the basis for the statement made by M.B.M. to the Employment Security Division is taken into account. We have no hesitation in saying that there was a material issue of fact as to whether M.B.M.'s conduct was extreme and outrageous.

The question of severe emotional distress is another matter. We can say with assurance that there is no issue of fact on humiliation, because Ms. Counce has eliminated that sort of distress by her own testimony.

Perhaps we should not say that the element of bodily harm is totally eliminated but it seems certain from respondent's testimony that her bodily harm was slight, if existent at all. We cannot say, with the degree of certainty that we should where summary judgment is involved, that there is no material issue of fact as to her unpleasant mental reactions such as anguish, shock, anger, embarrassment, chagrin, disappointment or worry.

We agree with the Court of Appeals that the summary judgment must be reversed. The cause is remanded to the Court of Appeals with directions to remand it to the trial court for further proceedings not inconsistent with this opinion.