Wilford HARRIS *v.* ARKANSAS BOOK COMPANY, Carolyn GIBSON, H. Allen GIBSON, Mary Jane WINTER and Judy W. SAYER

85-116                                          700 S.W.2d 41

Supreme Court of Arkansas
Opinion delivered November 18, 1985
[Rehearing denied January 13, 1986.*]

---

*Richard Quiggle, P.A.*, for appellant.

*Friday, Eldredge & Clark*, by: *Bill S. Clark* and *Michael S. Moore*, for appellee.

ROBERT H. DUDLEY, Justice. Appellant, Wilford Harris, filed suit alleging wrongful termination of his employment by appellees, Arkansas Book Company and its four owner-partners. He sought tort damages for (1) the intentional infliction of emotional distress and (2) bad faith discharge. He sought contract damages for (1) breach of his employment contract and

(2) breach of a promise to pay him a pension. The trial court granted a directed verdict on the tort claims, but let the contract claims go to the jury. The jury returned a $93,700 verdict for appellant. The trial court then granted a judgment notwithstanding the verdict on the ground that the employment contracts are unenforceable under the Statute of Frauds. We affirm.

In the early and mid-1930's, appellant Harris was a summertime employee of the Arkansas Book Company, a book depository. In 1938, he became a full-time employee and, from that time until his discharge in 1979, he served as manager of appellees' warehouse. He never had a written contract of employment. He was assured by a previous partner-owner that he could have his job "for many more years" and that the company would pay him some unspecified type of pension. The company had no stated or organized pension plan for its employees, although one employee did receive periodic payments for two years immediately following his retirement.

At appellant's discharge, J.D. Harris, appellees' general manager, and Carolyn Gibson, one of the partners, held a discussion with appellant. They told him that he had been an unsatisfactory employee by refusing to follow management directives, by keeping irregular hours, by acting outside his authority, and most importantly, his salary of $28,000.00 was more than the job called for and more than they could pay. He was given two weeks of unused vacation time, but no severance pay.

Appellant later applied for unemployment compensation benefits, and the appellees contested the claim. One of the grounds given by appellees for appellant's discharge involved ordering some labels without first obtaining management's permission. It was established at trial that appellees did not know of the incident until after appellant had been discharged. In addition, appellant put on proof that he got along well with publishers' representatives as well as with the majority of his fellow workers.

Appellant first contends that the trial court erred in directing a verdict against him on his claim of intentional infliction of emotional distress. Viewing the evidence in the light most favorable to appellant, as we must do, we do not find sufficient evidence to hold that fair minded people might have found appellees liable for the tort of emotional distress.

■■ As a matter of law, we recognize the tort cause of action for the intentional infliction of emotional distress, sometimes called the tort of outrage. *M.B.M. Co. v. Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980). In *Givens v. Hixson*, 275 Ark. 370, 631 S.W.2d 263 (1982), we stated:

> The new and still developing tort of outrage is not easily established. It requires clear-cut proof. "Liability has been found *only* where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." [Citations omitted.]

■■ In *Tandy Corp. v. Bone*, 283 Ark. 399, 678 S.W.2d 312 (1984), we emphasized that the conduct must be both "extreme *and* outrageous," while in *Hess v. Treece*, 286 Ark. 434, 693 S.W.2d 792 (1985), we explained that "clear-cut proof" does not mean greater proof than a preponderance of the evidence. It is for the trial court to determine, in the first instance, whether the conduct may be so extreme *and* outrageous as to permit recovery. Restatement of Torts (2d), § 46, Comment *h* (1965); *Givens v. Hixson, supra.*

■■ The trial judge was unquestionably right in granting the directed verdict on the count alleging the tort of outrage. The gravamen of appellant's argument is that he was discharged after working for the book company for 49 years. Because of the employer's right to discharge an at-will employee, a claim of outrage by an at-will employee cannot be predicated upon the fact of the discharge alone. However, the manner in which the discharge is accomplished or the circumstances under which it occurs may render the employer liable. *M.B.M. Co. v. Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980). To be actionable the employer's conduct must be so extreme and outrageous as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. The discharge of a "long time employee alone does not meet that test. Appellant also argues that the tort of outrage was inflicted because he was promised employment until the age of 70 and "lost four years salary at $28,000 a year and an expected pension" as a result of his wrongful termination. While the breaking of

some promises may well constitute conduct utterly intolerable in a civilized community, this is not such a case. There was no testimony that appellant was promised employment until he was 70 years old. Appellant testified that he received letters from earlier partners which concluded with phrases such as "looking forward to a continued employment or association for many more years." Such statements were nothing more than a polite closing salutation intended simply to add a touch of personal warmth to an otherwise businesslike letter. The statement expressed a hope or expectation rather than a promise. *See Hillsman* v. *Sutter Community Hosps.*, 153 Cal. App. 3d 743, 200 Cal. Rptr. 605 (1984). Appellant has abstracted his own testimony on the issue as follows:

> Another vague area was when the appropriate time for me to retire would be. All of my life, I had in the back of mind seventy as the age I would like to retire. I am now seventy-one. I was very close to sixty-six when I was terminated by Arkansas Book Company. No one at Arkansas Book Company ever indicated to me that there was a time when they expected me to leave the company.

In addition, appellant testified that there never was an amount or a percentage of wages fixed or agreed upon for a pension. There were no company policies or handbooks setting forth a pension plan.

A supposed breach of vague assurances of long-term employment does not constitute the tort of outrage. Surely, most employers express hope that newly hired employees will enjoy a long career with them, but those employers hardly intend for their sentiments to form a contract with the employee. Similarly, the supposed breach of an undefined pension plan does not constitute the tort of outrage. In addition, we find nothing in the communication concerning appellant's unemployment compensation which rises to the level of the tort of intentional infliction of emotional distress.

The appellant next contends that "the trial judge erred in not submitting the plaintiff's instructions charging the tort of bad faith discharge to the jury." However, the appellant has not abstracted the requested instructions. Requested instructions that are not abstracted cannot be considered on appeal under

Rule 9(d).

Appellant's next point of appeal is that the trial judge erred in refusing to give his requested jury instruction concerning a pension. Again, the instruction is not abstracted, and we do not consider the matter.

■ Appellant next argues that the trial court erred in granting a judgment notwithstanding the verdict on his $93,700 verdict for breach of contract. Again, the trial court was correct. Appellant's alleged oral contract, made 20 or 30 years ago, for employment until he reached the age of 70 is clearly barred by the Statute of Frauds. *Meyer v. Roberts*, 46 Ark. 80 (1885).

■ Appellant presents four sub-points contending that the Statute of Frauds should not be applied. It would unduly lengthen this opinion to respond to all four of the sub-points, but we do consider one of them worthy of discussion. Appellant contends that Ark. Stat. Ann. § 81-310 (Repl. 1976) renders the Statute of Frauds nonapplicable. Ark. Stat. Ann. §§ 81-308 to - 310 comprise Act 61 of 1889, which provides a penalty for a corporation which discharges an employee, with or without cause, and does not promptly pay his earned wages. The act does not in any manner repeal or replace the Statute of Frauds.

■ Appellant next argues that the trial court erred in granting the judgment notwithstanding the verdict based on the Statute of Frauds because a motion for a judgment notwithstanding the verdict must state specific grounds and appellees' motion did not specify the Statute of Frauds. *See* ARCP Rule 50(a). Appellant tacitly admits that appellees' memorandum in support of the motion extensively discusses the Statute of Frauds, but contends the discussion was inconsistent, that is, appellees argued that if the contract was for more than one year, the Statute of Frauds applied, but if it was employment at-will the appellant was not entitled to future wages. The grounds were stated with sufficient specificity. Any difficulty in specificity arose because appellant had inconsistent claims. He claimed he was entitled to damages under an oral contract not to be performed within one year, or else he was entitled to damages under an oral employment at-will contract.

Affirmed.

Purtle, J., not participating.