The Honorable Stanley Russ State Senator P.O. Box 787 Conway, Arkansas 72032
Dear Senator Russ:
This is in response to your request for an opinion, on behalf of Mr. Willis Hampton, concerning whether it is legal for a state agency to demote and transfer an employee because he is "having financial problems."
As an initial matter, I should note that, due to its general nature, I will be unable to offer a definitive answer to Mr. Hampton's question. The particular circumstances of his situation, which were not provided in the request for an opinion, would be relevant in assessing his specific case. It is my hope, however, that the general discussion provided below will be of some assistance.
It is important to note from the outset that Arkansas has long adhered to the employment-at-will doctrine. Under this doctrine, "when the term of employment in a contract is left to the discretion of either party, or left indefinite, or terminable by either party, either party may put an end to the relationship atwill and without cause." Griffin v. Erickson, 277 Ark. 433,436, 642 S.W.2d 308, 310 (1982) (Emphasis supplied in original.)See also Smith v. American Greetings Corp., 304 Ark. 596,597, 804 S.W.2d 683 (1991) (stating that an at-will employee may be discharged for "good cause, no cause, or even a morally wrong clause.") The fact that the employment is public rather than private does not alter this rule. Griffin v. Erickson,277 Ark. at 437.
The employment-at-will doctrine has, however, in recent years been modified by the Arkansas Supreme Court. In Gladden v.Arkansas Children's Hospital, 292 Ark. 130, 728 S.W.2d 501
(1987), the Court modified the doctrine by holding that if the employment contract (which may be embodied in a personnel manual or regulation) contains an express provision against termination except for cause, an at-will employee may not be arbitrarily discharged in violation of such a provision.[1]
Additionally, in Sterling Drug, Inc. v. Oxford, 294 Ark. 239,743 S.W.2d 380 (1988), the Court cited with approval a United States District Court opinion which outlined four exceptions to the employment-at-will doctrine; the Court quoted the following passage in its opinion:
 Arkansas law would recognize at least four exceptions to the at-will doctrine, excluding implied contracts and estoppel. These are (1) cases in which the employee is discharged for refusing to violate a criminal statute; (2) cases in which the employee is discharged for exercising a statutory right; (3) cases in which the employee is discharged for complying with a statutory duty; and (4) cases in which employees are discharged in violation of the general public policy of the state.
Sterling Drug, 294 Ark. at 245, 743 S.W.2d at 383 (quotingScholtes v. Signal Delivery Serv., Inc., 548 F.Supp. 487, 494
(W.D. Ark. 1982)).[2] The Court recognized the public policy exception to the employment-at-will doctrine in SterlingDrug, which involved the dismissal of an employee who had reported his employer to the government for pricing violations. The employee sued his employer for wrongful discharge and the tort of outrage.[3] In recognizing the public policy exception to the at-will doctrine, the Court stated:
 [A]n employer should not have an absolute and unfettered right to terminate an employee for an act done for the good of the public. Therefore, we hold that an at-will employee has a cause of action for wrongful discharge if he or she is fired in violation of a well-established public policy of the state. This is a limited exception to the employment-at-will doctrine. It is not meant to protect merely private or proprietary interests. . . .
Sterling Drug, 294 Ark. at 249, 743 S.W.2d at 385
(1988).[4] The public policy of a state, as referred to inSterling Drug, is found in its constitution and statutes.Sterling Drug, 294 Ark. at 249.[5]
The employment-at-will doctrine, as discussed above, would appear to apply to most forms of state employment. Thus, it appears that if a state employee is an "at-will" employee, he can be terminated without cause, unless one of the exceptions to the employment-at-will doctrine apply (i.e., public policy exception, or one of the other exceptions noted by the Court in M.B.M. Co.v. Counce) or unless there is some other basis upon which to rely, such as a personnel policy, administrative regulation, constitutional provision, or statutory provision which would preclude dismissal for that reason. With respect to Mr. Hampton's situation, I have uncovered no Arkansas case in which a cause of action for wrongful discharge has been premised upon the argument that to fire or demote an employee for having "financial problems" contravenes the public policy of this state. Thus, I cannot offer an opinion in that regard, since the existence of a clear and substantial public policy (for purposes of an exception to the employment-at-will doctrine) presents a question of law for the courts. See City of Green Forest v. Morse,316 Ark. 540, 873 S.W.2d 155 (1994).
As for whether there would be a statutory prohibition to dismissing or demoting a state agency employee for having "financial problems," my research has yielded no statutes in this regard.[6] As for constitutional provisions, there could be an issue as to whether dismissal or demotion for the reason outlined by Mr. Hampton would be violative of the Due Process Clause of the Fourteenth Amendment, which provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In ascertaining whether the due process clause is even applicable in a particular case, it is necessary to determine as an initial matter whether there is a "property" or "liberty" interest in the employment in question. In this regard, it has been held that there is, as a general matter, no "property" or "liberty" interest in public employment unless such a right has been created by state law or a similar independent source. Bishop v. Wood, 426 U.S. 341
(1976). My research has yielded no state statutes which would create a property interest in state employment in general. As for whether another independent source (such as an administrative regulation or personnel manual of a specific state agency which lists bases for termination, suspension, or demotion of agency employees) would create a property interest in the agency job at issue, I am unable to make such a determination since Mr. Hampton has not indicated to which state agency he is referring in his correspondence. If a property interest does exist in any particular case, the test employed to determine whether a particular practice endangering this right is constitutional is the so-called "rational basis" test. Under this test, a court asks whether there is any conceivable rational basis which would support the practice in question.
It has been stated with regard to Fourteenth Amendment analysis, however, that:
 It is established by now that a State may not constitutionally impose arbitrary or discriminatory employment criteria and may not in general condition public employment upon the willingness of an employee or would-be employee to forego the exercise of rights protected by some of the first ten of the amendments to the Constitution as brought forward into the 14th Amendment . . . [citations omitted.] But, the 14th Amendment to the Constitution has not yet been extended so far as to insure job security, as such, to public employees. Aside from considerations of race, religion, or constitutionally protected conduct . . . a public employee still assumes the risk, as far as the Constitution is concerned, of being discharged for personal or political reasons.
Norton v. Blaylock, 285 F.Supp. 659 (W.D. Ark. 1968), at 662.
Again, whether any colorable constitutional claim would arise from the facts you describe would involve an analysis of all the pertinent facts by a court faced with the issue.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Nancy A. Hall.
[1] See also Drake v. Scott, 823 F.2d 239 (8th Cir. 1987) (holding that administrative regulation of the Arkansas Department of Human Services which listed reasons for which an employee could be discharged, suspended, or demoted did not, by implication, assure that employees would not be fired except for those stated reasons, since there was no express provision to that effect, as required by the decision in Gladden v. ArkansasChildren's Hosp., 292 Ark. 130, 136, 728 S.W.2d 501, 505 (1987);Crain Industries, Inc. v. Cass, 305 Ark. 566, 571,810 S.W.2d 910, 913 (1991) (noting exception to employment-at-will doctrine "where there is an agreement that the employment is for a specified time, in which case firing may be only for cause, or where an employer's employment manual contains an express provision stating that the employee will only be dismissed for cause and that provision is relied on by the employee.")
[2] In M.B.M. Co. v. Counce, 268 Ark. 269, 596 S.W.2d 681
(1980), the Arkansas Supreme Court indicated that it might recognize an exception to the at-will doctrine if an employee is "discharged for exercising a statutory right, or for performing a duty required of her by law or that the reason for the discharge was in violation of some other well established public policy."
[3] The Arkansas Supreme Court first recognized a cause of action for the tort of outrage or intentional infliction of emotional distress in an employment setting in the case ofM.B.M. Co. v. Counce, 268 Ark. 269, 596 S.W.2d 681 (1980). With respect to the claim of outrage, the Court has stated that "[b]ecause of the employer's right to discharge an at-will employee, a claim of outrage by an at-will employee cannot be predicated upon fact of discharge alone. However, the manner in which the discharge is accomplished or the circumstances under which it occurs may render the employer liable." Harris v.Arkansas Book Co., 287 Ark. 353, 356, 700 S.W.2d 41, 43 (1985). Additionally, the conduct giving rise to the cause of action must be extreme and outrageous, that is, "conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."M.B.M. Co. v. Counce, 268 Ark. at 280.
[4] Most recently, in the case of City of Green Forest v.Morse, 316 Ark. 540, 546-547, 873 S.W.2d 155 (1994), the Court, in referring to this language in Sterling Drug, stated:
 In sum, the exceptions to the at-will doctrine will be recognized to protect a well-established and substantial public policy and not merely to protect the private or proprietary interests of the employee. The existence of a clear and substantial public policy presents a question of law. [Emphasis supplied in original.]
[5] For cases in which the Court has found that the public policy of the state is illustrated by particular statutes, See,e.g., Sterling Drug, Inc. v. Oxford, 294 Ark. 239,743 S.W.2d 380 (1988) (holding that A.C.A. § 5-53-112 (1987) illustrates that there is an established public policy favoring citizen informants or crime fighters), Wal-Mart Stores, Inc. v.Baysinger, 306 Ark. 239, 812 S.W.2d 463 (1991) (holding that A.C.A. § 11-9-107 (1987) demonstrates that it is contrary to the public policy of the state to discharge an employee for making a claim for workers' compensation benefits).
[6] There is, however, a federal statute which prevents "governmental units" from discriminating against employees or prospective employees who have filed for bankruptcy protection.See 11 U.S.C. § 525(a). Additionally, 15 U.S.C. § 1674
prohibits the discharge of any employee whose wages have been garnished for one debt. See also Wallace v. Debron Corp.,494 F.2d 674 (8th Cir. 1974) (prohibiting the dismissal of an employee whose wages had been garnished for more than one debt).