The Honorable B.G. Hendrix State Representative 2215 So. 40th Street Fort Smith, Arkansas 72903
Dear Representative Hendrix:
This is in response to your request for an opinion on the legality of a private employer instituting a program under which applicants for employment would be required to submit to drug tests and existing employees would be required to periodically submit to drug tests.
For the reasons that follow, it is my opinion that such a program would indeed be "legal," and that any potential employee litigation challenging the testing or a dismissal based upon the testing would be unsuccessful.
As an initial matter, it should be pointed out that several constitutional challenges which would ordinarily be asserted in an effort to prohibit such testing, will not be available to a plaintiff who is required to submit to such a test by a private employer. The strictures of the Fourth and Fourteenth Amendments to the United States Constitution do not apply unless state action is present.[1] Greco v. Halliburton Co., 674 F. Supp. 1447, (D.Wyo. 1987); Stevenson v. Panhandle Eastern Pipe Line Co.,680 F. Supp. 859, (S.D. Tex. 1987); and Monroe v. Consolidated Freightways, Inc., 654 F. Supp. 661 (E.D.Mo. 1987). Thus, a potential plaintiff attempting to sue a private employer must rely on state causes of action.
Two possible causes of action a plaintiff might bring include an action for wrongful dismissal based upon public policy grounds, and an action for bad faith dismissal or a breach of the duty of good faith and fair dealing. It is my opinion that under current Arkansas law each of these actions would fail. Both of these causes of action would follow the dismissal of an employee who either tests positive on the drug test, or who refuses to take the test.
In discussing these two potential state law claims, initial reference must be made to Arkansas' "employment-at-will" doctrine, which the Arkansas Supreme Court has most recently espoused in Gladden v. Arkansas Children's Hospital, 292 Ark. 130, 728 S.W.2d 501
(1987). In that case, the court retained the general Arkansas rule that employment is at will, (meaning that either party may terminate the employment relationship for any reason), but modified it to provide that in instances where a personnel manual contains an express provision against termination except for cause, the employee may not be arbitrarily dismissed (i.e. without cause).
If an employer has a policy of termination only for cause, he or she may not violate this policy with an arbitrary dismissal. It is my opinion, however, that such an employer would not be acting "arbitrarily" by dismissing an employee who either refuses to take, or tests positive on a drug test.
With this principle in mind, we are now prepared to discuss a potential cause of action for wrongful dismissal based upon public policy. The Arkansas Supreme Court has a[t] least recognized that such an action may be meritorious, but only in certain instances. The court in M.B.M. Company v. Counce, 268 Ark. 269, 596 S.W.2d 681
(1980), was faced with a claim that an employer breached the employment relationship in violation of public policy. The court found no such breach stating:
 Ms. Counce first argues that there was a breach of the employment relationship in violation of public policy. This is but another way of saying that M.B.M. breached the contract of employment. She relies to some extent upon cases holding that discharge of an employee for filing a worker's compensation claim, for refusing to "go out" with her foreman, for going on jury duty, or for refusal to commit perjury, is a breach of contract. She contends that, upon the authority of such cases, she has stated a cause of action in contract. We might well agree with Ms. Counce if there was any indication that she was discharged for exercising a statutory right, or for performing a duty required of her by law, or that the reason for the discharge was in violation of some other well established public policy. That simply is not the case here. (Emphasis added.)
268 Ark. at 273.
Thus, the recent U.S. Supreme Court cases of Skinner v. Railway Labor Executives Association, et al. (March 21, 1989 — Westlaw No. 23210); and National Treasury Employee Union, et al. v. Raab, (March 21, 1989 — Westlaw No. 23209), are inapposite to your question. It is my opinion that drug testing by a private employer, especially where its employees perform functions which might create a danger to themselves or others, would not fall within any of the categories which the court deems necessary for recovery under public policy grounds. This conclusion is buttressed by the holding in Greco, supra, where the court stated:
 Wyoming has not yet recognized a cause of action for wrongful discharge based upon a violation of public policy. Even if such an action had been recognized, plaintiff cannot support his contention that termination for refusal to submit to urinalysis required by his employer violated public policy against invasions of privacy. I cannot conclude that Halliburton's attempts to ensure a drug-free workplace are against the public policy of the State of Wyoming.
674 F. Supp. at 1451.
The Greco court also concluded that the defendant's actions did not breach any covenant of good faith and fair dealing, stating:
 Even if I could conclude that a covenant of good faith and fair dealing should be implied in plaintiff's employment contract, there is nothing about the conduct of Halliburton in dismissing plaintiff that suggests that Halliburton employees acted with anything other than good faith. The company had a valid purpose in implementing the contraband policy. The policy expressed a legitimate concern about the safety of its employees and the public. Plaintiff knew that it was the company's policy to keep the workplace safe by prohibiting drug use on Company premises by Halliburton employees. He knew that he might have to submit to periodic drug tests. He was not singled out for a test — to the contrary, all of the ______ employees were asked to take the test, and only plaintiff refused. In short, there was nothing untoward in what Halliburton did. This is not a situation that requires implication of a covenant of good faith and fair dealing in the plaintiff's employment contract.
 674 F. Supp. at 1450-51.
It is my opinion that the Arkansas Supreme Court would take a similar view of the law in this context. See generally, Harris v. Arkansas Book Company, 287 Ark. 353, 700 S.W.2d 41 (1985).
It is therefore my opinion that a potential plaintiff facing a private employer defendant in Arkansas would have little chance of any relief or recovery based upon his refusal to submit to a drug test, or his or her failure thereof.[2] I have enclosed a copy of an article relevant to this topic, which may offer private employers some additional guidance in the area.
The Attorney General is required under A.C.A. 25-16-706 to provide his opinion to the General Assembly on the constitutionality of any proposed bill. He is precluded, however, from engaging in the private practice of law. Therefore, this opinion is not provided for the benefit of private third parties and should not be relied upon or offered for that purpose.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
[1] In the absence of state action, an entirely different analysis is required that which would be required under federal or state imposed drug testing.
[2] As a final note, I feel compelled to point out that the ultimate outcome of litigation may depend to some degree upon the "reasonableness" of the drug-testing program. It is my opinion that pre-employment testing, and periodic testing thereafter, would meet a reasonableness standard, while entirely random testing, without some individualized suspicion, would fare worse in the courts.